OHRENSTEIN & BROWN, LLP
Michael D. Brown (MB9856)
Zachary G. Schurkman (ZS1985)
1305 Franklin Avenue, Suite 300
Garden City, New York 11530
T: (516) 873-6334
F: (516) 873-8912

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In the Matter of the Application of              )
                                                 )        Civil Action No.
                                                 )
AMTRUST NORTH AMERICA, INC. and                  )
TECHNOLOGY INSURANCE COMPANY, INC.               )
as Judgment Creditors of                         )
PACIFIC RE, INC. on behalf of its                )
protected cell PAC RE 5-AT, Judgment Debtor,     )
                                                 )
                        Petitioners,             )
        v.                                       )
                                                 )
SAFEBUILT INSURANCE SERVICES, INC.,              )
                                                 )
                        Respondent.              )
-------------------------------------------------------------X

**MEMORANDUM OF LAW OF AMTRUST NORTH AMERICA, INC. AND TECHNOLOGY INSURANCE COMPANY AS JUDGMENT CREDITORS OF PACIFIC RE, INC. ON BEHALF OF PAC RE 5-AT, JUDGMENT DEBTOR, IN SUPPORT OF MOTION FOR TURNOVER ORDER**

**OHRENSTEIN & BROWN, LLP**
*Attorneys for Judgment Creditors*
1305 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 873-6334

On the Brief:
    Michael D. Brown
    Zachary G. Schurkman

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii
PRELIMINARY STATEMENT ............................................................................................... 1
POINT I ........................................................................................................................................ 3
SAFEBUILT MUST PAY THE JUDGMENT ......................................................................... 3
    1.   JUDGMENT CREDITORS MAY COLLECT DIRECTLY AGAINST SAFEBUILT .................................. 4
    2.   SAFEBUILT – INDEMNIFICATION AS PARTICIPANT .................................................................. 5
    3.   SAFEBUILT – NEGLIGENCE AND VICARIOUS LIABILITY ......................................................... 7
CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Allstate v. the State Board of Equalization,*
   (1959) 169 CA 2d 165, 336 P 2d 961 .................................................................................. 7, 8

*Epperson v. Entertainment Express, Inc.,*
   242 F.3d 100 (2d Cir.2001) ..................................................................................................... 4

*Groves v. City of Los Angeles,*
   (1953) 40C 2d 751, 256 P 2d 309 ............................................................................................ 7

*Guercio v. Hertz Corporation,*
   40 N.Y.2d 680 (1976) .............................................................................................................. 7

*Johnson v. Chem. Bank,*
   No. 96 Civ. 4262(SS), 1996 WL 706893 (S.D.N.Y. Dec. 9, 1996) ......................................... 5

*JP Morgan Chase Bank, N.A. v. Motorola, Inc.,*
   47 A.D.3d 293, 846 N.Y.S.2d 171 (1st Dept 2007) ................................................................ 9

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*
   313 F.3d 70 (2d Cir. 2002) ...................................................................................................... 6

*Kashi v. Gratsos,*
   712 F.Supp. 23 (S.D.N.Y. 1989) ............................................................................................. 4

*LaBarbera v. Audax Const. Corp.,*
   971 F.Supp.2d 273 (E.D.N.Y. 2013) ....................................................................................... 4

*Martinez v. Capital One, N.A.,*
   863 F. Supp. 2d 256 (S.D.N.Y. 2012) ..................................................................................... 5

*Oppel v. Empire Mut. Ins. Co.,*
   517 F. Supp. 1305 (S.D.N.Y. 1981) ........................................................................................ 9

*Pac Re 5-AT v. AmTrust North America, Inc.,*
   CV-14-131-BLG-CSO, 2015 WL2383406 (D. Mont. May 23, 2015) ................................ 4, 6

*Port Chester Electrical Construction Corp. v. Atlas,*
   40 N.Y.2d 652 (1976) .......................................................................................................... 6, 7

*Vitale v. City of New York,*
   183 A.D.2d 502, 583 N.Y.S.2d 445 (1st Dept 1992) .............................................................. 9

*White Plains Plaza Realty, LLC v. Cappelli Enterprises, Inc.,*
   127 A.D.3d 1220, 8 N.Y.S.3d 369 (2d Dept 2015) ............................................................. 6, 7

**Rules**

C.P.L.R. § 5221(a) ......................................................................................................................... 5
C.P.L.R. § 5201(b) ....................................................................................................................... 12
C.P.L.R. § 5227 ......................................................................................................................... 5, 8
C.P.L.R. § 5201 ........................................................................................................................ 5, 12
Rule 69(a) of the Federal Rules of Civil Procedure ................................................................... 1, 4

## PRELIMINARY STATEMENT

The Petitioners Judgment creditors, AmTrust North America, Inc. and Technology Insurance Company ("TIC") (collectively "Petitioners," or "Judgment Creditors" or "AmTrust"), pursuant to Rule 69(a) of the Federal Rules of Civil Procedure and New York Civil Practice Law and Rules ("C.P.L.R.") §§ 5201(a), 5221(a), 5225(b) and 5227, seek an Order directing Safebuilt Insurance Services, Inc. ("Safebuilt"), to turn over to Petitioners the funds due and owing to Pac Re on behalf of Pac Re 5-AT ("Cell 5"), Petitioners' Judgment Debtor:

    i.    as the "Participant" and beneficial owner of Cell 5 for the judgment amount due and owing to Petitioners from their Judgment Debtor which, as of July 28, 2016, is $8,462,216.64 together with post judgment interest thereon through the date of payment at 9% annually, until the date of payment; or alternatively,

    ii.    the amount of premium, less specified deductions, diverted from Cell 5 by Safebuilt in the form of various "policy fees," calculated at more than $10.7 million; or alternatively,

    iii.    the amount of policy fees owed to TIC pursuant to contract, calculated as more than $10.7 million, which had they been paid to TIC, would have avoided the arbitration resulting in the Judgment.

Judgment Creditors hold a wholly unsatisfied Judgment with interest totaling $8,462,216.64 as of July 28, 2016. The Judgment was entered on March 25, 2016 in the action entitled *AmTrust North America, Inc. and Technology Insurance Company, Inc., v. Pacific Re, Inc. and Pac Re 5-AT*, Case No. 15-cv-7505 (CM) with an amended judgment entered and confirmed on May 19, 2016. *See* Ex. 3.[1]

---

[1] All references to "Ex." and "Exs." refer to the exhibits annexed to the accompanying Petition ("Pet.") included in the Declaration of Michael D. Brown ("Brown Decl.") dated July 28, 2016.

1

In October 2010, Petitioners agreed to participate in an insurance/reinsurance program (the "Program") organized by Safebuilt. Pursuant to two Quota Share (Reinsurance) Agreements ("QSAs"), Brown Decl. Exs. 7 and 8, and two General Agency Agreements ("GAAs"), Brown Decl. Exs. 9 and 10, TIC, an insurance company affiliate of AmTrust North America, Inc., agreed to reinsure insurance policies of non-party, United Specialty Insurance Company ("USIC"), underwritten, bound and issued by Safebuilt (the "Policies").[2] Pursuant to the Safebuilt Captive Reinsurance Agreement ("CRA" Ex. 1-1) between TIC and Pacific Re, Inc. ("Pac Re") on behalf of its protected cell, Cell 5, TIC retroceded to Pac Re and Cell 5 the first $250,000 of each claim plus a "loss corridor" sitting above the first $250,000 of each claim. Pursuant to Article 26 of the CRA Pac Re (which is ultimately owned and controlled by the owners of Safebuilt) and Cell 5 (which was beneficially owned by Safebuilt as the "Participant") were to fully collateralize the reinsurance obligations owed to Petitioners. *See id.,* Art. 26.

As described in the Petition, Pac Re acting for itself and for Cell 5 has failed to honor their reinsurance obligations to Petitioners. That failure has led to the Judgment, which the Judgment Debtors have failed to pay. The Judgment is an incontrovertible liability of Cell 5. As Safebuilt is the Participant of Cell 5, it is a debtor of Cell 5. Therefore, pursuant to the Federal Rules and the New York C.P.L.R. Petitioners are entitled to obtain directly from Safebuilt the debt Safebuilt owes Petitioners' Judgment Debtor, Cell 5.

As alleged in the Petition, Safebuilt was contractually obligated to pay into trust[3], for which Pac Re and Cell 5 were Grantors and for which TIC was the sole beneficiary, all premium,

---

[2] There are two QSAs and two GAAs, one for policies written for California insureds and the other for insureds of the other states in which the Policies were issued. The only difference between the two QSAs on the one hand, and the two GAAs, on the other were small financial differences to account for the fact in all states but California TIC reinsured USIC 100%, but only 90% in California. Otherwise the QSAs and GAAs, respectively, were substantively the same.

[3] *See* the Loss Fund Trust Agreement and Loss Corridor Trust Agreement, Exs. 8 and 9.

2

less certain defined deductions, in order to collateralize the reinsurance obligations of Pac Re and Cell 5. Safebuilt, without the consent of its principal TIC, unilaterally treated a portion of the premium it collected as "policy fees." Safebuilt then either kept these policy fees for itself and/or distributed them to other entities, many affiliated with Safebuilt and Safebuilt's owners while failing to report these fees to Petitioners despite being contractually obligated to do so. This unreported policy fee premium is a debt owed to Cell 5 by Safebuilt, who acted not just contractually as General Agent for Petitioners, but on behalf of Cell 5 as well.

There is no defense to the obligations owned by Safebuilt to Pac Re on behalf of Cell 5 as set forth herein. The motion for turnover should be granted summarily.

## POINT I

## SAFEBUILT MUST PAY THE JUDGMENT

On September 9, 2015 AmTrust obtained an Interim Final Order and Award against Pacific Re, Inc. and Cell 5 through an arbitration as required in Art. 22 of the CRA (the "Award"). Pursuant to the Award, Judgment Debtor, Cell 5, was ordered to pay Petitioners $7,833,474.29 including $6,373,244, to be deposited by Debtor in the Loss Corridor Trust for payment of claims and other reinsured expenses pursuant to the CRA, and $1,460,230.29 as reimbursement to Petitioners for payment of reinsured and unreimbursed third-party administrator fees owed by Cell 5 pursuant to the CRA. *See* Interim Final Order and Award, Ex. 12. The Award was confirmed and judgment entered on March 25, 2016 and amended on May 23, 2016. *See* Pet. Exs. 1-2, 1-3 (collectively the "Judgment"). The Judgment remains

outstanding. No payment has been made by either Pac Re or Pac Re on behalf of Cell 5.[4]

### 1. Judgment Creditors May Collect Directly Against Safebuilt

A U.S. District Court has the power to enforce its own judgments under Rule 69(a) of the Federal Rules of Civil Procedure and in connection therewith, to entertain supplemental proceedings under state law, including the issuance of a "Turnover Order." *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100,107 (2d Cir.2001); *LaBarbera v. Audax Const. Corp.*, 971 F.Supp.2d 273, 279 (E.D.N.Y. 2013); *Kashi v. Gratsos*, 712 F.Supp. 23, 25-26 (S.D.N.Y. 1989). In addition, this Court has the power to issue orders in this context against individuals who are not parties to the original action but have possession of assets in which the judgment debtor has an interest. *Kashi*, 712 F.Supp. at 25.

New York CPLR section 5201 provides, in pertinent part, that:

> (a) A money judgment may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor, whether it was incurred within or without the state, to or from a resident or non-resident, unless it is exempt from application to the satisfaction of the judgment. <u>A debt may consist of a cause of action which could be assigned or transferred accruing within or without the state</u>
>
> (b) Property against which a money judgment may be enforced. A money judgment may be enforced against any property which could be assigned or transferred, <u>whether it consists of a present or future right or interest</u> and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment.

(Emphasis added.)

CPLR Section 5227 provides, in pertinent part:

> Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the

---

[4] Pursuant to Montana Statutory Law, the domicile of Judgment Debtors, and as interpreted by the United States District Court for the District of Montana, *Pac Re 5-AT v. AmTrust North America, Inc.,* CV-14-131-BLG-CSO, 2015 WL2383406 at *4 (D. Mont. May 23, 2015) (the "Montana Action"), Cell 5, like other unincorporated cells, is not a jural person and can neither sue nor be sued. Under Montana Code Ann., protected cells own their assets, and those assets can only be used to discharge the cell's liabilities. Petitioner Technology Insurance Company is the <u>sole</u> reinsured of Cell 5. *See* Preferred Global First Supplemental Interrogatory Response ¶ 16, Ex. 3.

4

court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment; or it may direct that a judgment be entered against such person in favor of the judgment creditor. Costs of the proceeding shall not be awarded against a person who did not dispute the indebtedness.

Such proceedings are properly brought in the courts that are most familiar with the underlying judgment. *See* C.P.L.R. § 5221(a); *Johnson v. Chem. Bank*, No. 96 Civ. 4262(SS), 1996 WL 706893 at *4 (S.D.N.Y. Dec. 9, 1996); *Martinez v. Capital One, N.A.*, 863 F. Supp. 2d 256, 264 (S.D.N.Y. 2012), *aff'd* and remanded *sub nom Cruz v. TD Bank, N.A.*, 742 F.3d 520 (2d Cir. 2013).

2. **Safebuilt – Indemnification as Participant**

Safebuilt was the General Agent and architect of the Safebuilt Program involving AmTrust, Cell 5, the Judgment Debtor, and other parties. In designing the Safebuilt Program, Safebuilt was the "Participant" in Cell 5, obligated to fund all liabilities of Cell 5:

> As beneficial owner of the Protected Cell, the Participant will be required to fund all of the liabilities of the Protected Cell and will be entitled to any assets remaining in the Protected Cell after the settlement of all liabilities incurred by the Protected Cell.[5]

*See* Participation Agreement, Ex. 2 at § 1.1.

That Safebuilt has responsibility to Cell 5 as the Participant of Cell 5 under the Participation Agreement is clear. First, Cell 5 brought the Montana Action against AmTrust asserting that only it, and not Pac Re, was the proper party to the Arbitration commenced by AmTrust. In support of the Montana Action, Cell 5 attached a copy of the "Participation Agreement" to its Complaint. *See* Exs. 1-4, 1-5 (filed copies of Participation Agreement and Complaint). Indeed, that Safebuilt was the Participant of Cell 5 was confirmed by the United

---

[5] The Participation Agreement was not executed by Safebuilt, apparently as a result of a clerical error, as Safebuilt is identified as the Participant in the Decretal Paragraph.

5

Stated District Court for the District of Montana, Billings Division, which recognized that: "Pacific Re and Safebuilt Insurance Services, Inc. ("Safebuilt") entered into a Participation Agreement. ECF 1–2 at 1". *Pac Re 5-AT*, 2015 WL 2383406 at *1.[6] Further, Safebuilt's status as Cell 5's "Participant" was further confirmed by the testimony of the Taft Companies ("Taft"), the Manager of both Pacific Re, Inc. and Cell 5. *See* Ex. 13 at 90:24-91:5. This fact was also confirmed by the testimony of the Office of the Montana Commissioner of Securities and Insurance ("CSI"). *See* Ex. 14 at 28:20-36:7.

Safebuilt currently has a debt, due and owing to Debtor pursuant to the terms of the Participation Agreement effective October 1, 2010. As a result of Safebuilt's debt to Cell 5 and failure by Cell 5 or Pac Re to satisfy the Judgment, the debt owed by Safebuilt to AmTrust's Judgment Debtor, Cell 5, may be collected by AmTrust directly from Safebuilt, as Cell 5's Judgment Creditor. *White Plains Plaza Realty, LLC v. Cappelli Enterprises, Inc.*, 127 A.D.3d 1220, 8 N.Y.S.3d 369 (2d Dept 2015); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70 (2d Cir. 2002). "CPLR Article 52 authorizes the court, upon a special proceeding brought by the judgment creditor, to compel any debtor of the judgment debtor to pay the debt, or so much of it as will satisfy the judgment, to the judgment creditor." *Port Chester Electrical Construction Corp. v. Atlas*, 40 N.Y.2d 652, 657 (1976). Safebuilt's obligation is stronger than typical indemnification agreements given their commonality of ownership and control, which is enforceable by a judgment creditor against the judgment debtor's indemnitor under well settled authority. *Id.*

In *Port Chester*, a sub-contractor, having obtained a judgment against a general contractor, sought to satisfy the judgment from the owner of the relevant construction project,

---

[6] While Safebuilt was not a party to the Montana Action, Pacific Re, Inc., which commenced the action on behalf of Cell 5, is ultimately owned and controlled by the individual owners of Safebuilt, Phillip Salvagio, David Pike, Carl Savoia and Mark Hunter.

who had contracted with the general contractor to reimburse it for the amount of all sub-contracts. The Court explained that "the Contractor was entitled to reimbursement from the Owner for the amount of the judgment" and therefore, pursuant to CPLR 5227, "[t]he Contractor's right to reimbursement from the Owner may be enforced by [the sub-contractor] since [sub-contractor] is the judgment creditor of the Contractor." *Id. See also Guercio v. Hertz Corporation*, 40 N.Y.2d 680 (1976) (finding that passenger - judgment creditor of leased vehicle's driver - could seek enforcement of judgment directly against Hertz as it owed a duty of indemnity to the driver under the rental agreement); *see also White Plains* 127 A.D.3d at 1220.

### 3. Safebuilt – Negligence and Vicarious Liability

Pursuant to the GAAs and QSA, Safebuilt was appointed the Program's General Agent and was required to act "under the direct supervision and control of [TIC] . . ." See GAAs, Exs. 9 and 10 at Decretal Paragraph and § 1.03 and QSA, Exs. 7 and 8 at § 18.01. It is widely recognized that insurance agents, unlike brokers, may not charge and collect "fees" separate from premium without the consent of their principal. For example, Safebuilt is a resident licensed insurance agent and broker in California. Safebuilt is headquartered and domiciled in California, and is a California company. California law clearly states:

> The California courts have held that all payments by the insured which are a part of the cost of insurance are premium, including any and all sums paid to an insurance agent. Groves v. City of Los Angeles, (1953) 40 Cal.2d 751, 256 P.2d 309; Allstate v. the State Board of Equalization, (1959) 169 Cal. App.2d 165, 336 P.2d 961.

Bulletin 806-6 ¶ 1 (Cal. Dept. of Insurance, Apr. 1, 1980), < http://www.insurance.ca.gov/0250-insurers/0300-insurers/0200-bulletins/bulletin-notices-commiss-opinion/upload/Bulletin80-6.pdf> (last checked Jul. 28, 2016). Further, the California Insurance Department has stated:

> 2. AN AGENT MAY NOT CHARGE FEES NOT AUTHORIZED BY INSURER

7

> General rules of agency law prohibit an agent from charging sums not authorized by the agent's principal. Should an insurer authorize its agents to collect "fees" such fees would have to be reported as premium by the insurer, and would, of course, have to comply with the anti-discrimination statutes. Therefore, an insurer cannot permit each of its agents to determine which fees that agent will charge because to do so would surely result in rate discrimination. This principle applies equally to insurance agents and life agents.

*Id.* In addition to this prohibition against agents charging fees without TIC's consent, the QSAs required Safebuilt to "remit" "Net collected premiums" (QSAs, Exs. 7 and 8 at § 6.03), and to report to TIC within 45 days of each month's close, amongst others: the "gross premium," Safebuilt's commission by percent and amount, and "net Premiums and surcharges." (*Id.* at § 6.05.) Nevertheless, without TIC's consent, Safebuilt charged more than $10.7 million in various policy fees, according to the entity jointly retained by Safebuilt and Petitioners in another proceeding. *See* Joint Fee Total Summary, Ex. 4.

As alleged in the Petition, Safebuilt negligently believed that as a licensed broker it was permitted to charge, collect and keep for its own use various policy fees collected from insureds in addition to premium. This was simply contrary to applicable law and the Program Agreements. Indeed, Safebuilt has acknowledged that the policy fees were part of the premium in its Verified Second Supplemental Responses to Plaintiffs' First Set of Interrogatories. *See* Ex. 5, Responses 12 and 13. Thus, Safebuilt acknowledged that it received "premium, less broker commissions, and deposited all of the premium in the "A-Rated Deposit Trust Account," and from these transferred what Safebuilt characterized as "Pure Premium" into the A-Rated Trust Account, which was then sent to the Trust, of which TIC was the sole beneficiary. The balance remaining in the A-Rated trust, Safebuilt acknowledged, included the policy fees which it acknowledges were <u>not</u> supplied to Cell 5, or a trust for which TIC was the beneficiary. *Id.*

The admission by Safebuilt that the policy fees were part of the premium which should have gone to the trust account holding the collateral to secure Pac Re's and Cell 5's reinsurance

8

obligations to Petitioners is also consistent with the way Safebuilt maintained other of its internal records. For example, pages 4 and 6 of the "SIS Insurance Services Contractors Gold Program Submission Request for Bind Checklist," the policy fees are listed as part of the "premium," the "premium total," and the "premium" on which Safebuilt's producing brokers' commissions were paid. *See* Ex. 18 at pp. 4 and 6.

Alternatively, even if it was proper for Safebuilt to charge and collect policy fees, those fees were the property of TIC. As stated at § 8.01 of the QSAs, the "Net Policy Fees" (defined as gross policy fees less return policy fees) belonged to TIC – 100% under the non-California QSA, and 98.4% under the California QSA. *See* Exs. 7 and 8, respectively. Had Safebuilt turned the net policy fees over to TIC, as contractually required, the $10.7 million in such fees, together with the funding that was provided to the two trust accounts that held the collateral for Pac Re's and Cell 5s reinsurance obligations to Petitioners would have been sufficient to discharge their reinsurance obligations to Petitioners, and the Arbitration which was the basis for the Judgment would never have been commenced.

As such, the mislabeling and diversion of premium and/or policy fees engaged in by Safebuilt constitutes actionable negligence to the detriment of Cell 5, as operated by Pac Re. Pac Re's cause of action on behalf of Cell 5 against Safebuilt for such negligence is properly brought by AmTrust as Cell 5's judgment creditor, standing in the shoes of Pac Re on behalf of Cell 5 as an assignable property interest. *Vitale v. City of New York*, 183 A.D.2d 502, 503, 583 N.Y.S.2d 445, 446 (1st Dept 1992) ("causes of action for indemnification and legal malpractice were assignable to .... judgment creditor"); *Oppel v. Empire Mut. Ins. Co.*, 517 F. Supp. 1305 (S.D.N.Y. 1981) (Assignability of tort claims); *JP Morgan Chase Bank, N.A. v. Motorola, Inc.*, 47 A.D.3d 293, 303, 846 N.Y.S.2d 171, 178-79 (1st Dept 2007) (holding that defendant's

potential liability from a pending action "may qualify as property available for enforcement of [the judgment creditor's] judgment under CPLR 5201(b)" if the proceeds of the future cause of action could be assigned or transferred by the judgment debtor.)  So too, per CPLR § 5201, it may be brought to enforce a right of action that exists but has not yet been commenced.

## CONCLUSION

Safebuilt, as Cell 5's "Participant", has an obligation to fund the liability of Debtor, Pac Re 5-AT stated through the Judgment.  As such, AmTrust may collect the Judgment directly from Safebuilt. Alternatively, Safebuilt is liable to Cell 5 for its negligence in mislabeling and diverting necessary premium funds leaving Cell 5 underfunded and causing a shortfall in an amount in excess of the outstanding Judgment and alternatively for taking $10.7 million of policy fees owned by TIC, which had they been paid to TIC by Safebuilt, would have avoided the arbitration which resulted in the Judgment.

Dated: July 28, 2016
       Garden City, NY

                              OHRENSTEIN & BROWN, LLP
                              By: _____
                              Michael D. Brown
                              Zachary G. Schurkman
                              *Attorneys for Judgment Creditors*
                              1305 Franklin Ave., Suite 300
                              Garden City, New York 11530
                              Tele No.: (516) 873-6334