### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Application of

AMTRUST NORTH AMERICA, INC. and
TECHNOLOGY INSURANCE COMPANY, INC.
As Judgement Creditors of PACIFIC RE, INC. on behalf
of its protected cell PAC RE 5-AT, Judgment Debtor,

                                        Petitioners,

     -against-

SAFEBUILT INSURANCE SERVICES, INC.,

                                        Respondent.

No.: 16-cv-6033

### RESPONDENT SAFEBUILT INSURANCE SERVICES'S MEMORANDUM OF LAW
### IN OPPOSITION TO PETITIONERS' MOTION FOR TURNOVER ORDER
### AND CROSS-MOTION TO DISMISS PETITIONER'S PETITION

## Table of Contents

TABLE OF AUTHORITIES ..................................................................................................ii-iii

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS ........................................................................................................2

   I.   Relevant Factual Background .........................................................................................2

   II.  Relevant Procedural History ...........................................................................................3

       A.  Arbitration Demand ...........................................................................................3

       B.  The Montana Action ..........................................................................................3

       C.  The SDNY Litigation..........................................................................................5

       D.  Interim Arbitration Award ..................................................................................6

ARGUMENT ............................................................................................................................7

   I.   Petitioners Are Not Entitled To A Turnover Order .........................................................9

       A.  Indemnity Is Improper Because of Bana Fide Factual Disputes Regarding The Relevant Contract..........................................................................10

       B.  Petitioners' Negligence Claim Is Based On Misrepresentations ...........................12

       C.  Vicarious Liability Is Improper ..........................................................................15

   II.  The Petition Is Jurisdicitionally Deficient Because Petitioners Failed To Serve Pac Re And Cell 5 ..................................................................................................................15

   III.  The Court Lacks Personal Jurisdiction Over SIS .......................................................16

       A.  SIS is Not Subject To Jurisdiction Under CPLR § 301 .......................................17

       B.  SIS is Not Subject To Specific Jurisdiction Under CPLR § 302(a) ......................18

       C.  The Claims Alleged Have No Nexus to New York ..............................................19

   IV.  The Court Lacks Subject Matter Jurisdiction .............................................................20

       A.  The Court Lacks Ancillary Jurisdiction Over Petitioners' Indemnity Claim.........22

       B.  The Court Lacks Ancillary Jurisdiction Over Petitioners' Negligence Claim ......24

       C.  The Court Lacks Ancillary Jurisdiction Over Petitioners' Vicarious Liability Claim..............................................................................................25

CONCLUSION ......................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Alliance Bond Fund, Inc. v. Grupo Mexicano  De Desarrollo, S.A.*,
190 F.3d 16 (2d Cir. 1999) ..................................................................................... 7-8

*AmTrust North America, Inc., et al. v. Safebuilt Insurance Services, Inc., et al.*,
No. 14-cv-9494...................................................................................................1, 5

*AmTrust North America, Inc. and Technology Insurance Company, Inc. v. Pacific Re, Inc. and
Pac Re 5-AT*, No. 15-cv-7505 (CM) .......................................................................7

*Estate of Ungar v. Palestinian Authority*,
400 F. Supp. 2d 541 (S.D.N.Y. 2005)...............................................................16, 17

*Estate of Ungar v. Orsacom Telecom Holding S.A.E.*,
578 F.Supp.2d 536, 538, 545, 551 (S.D.N.Y. 2008)...............................20, 21, 22, 24

*Epperson v. Ent. Express, Inc.*,
242 F.3d 100 (2d Cir. 2001) ............................................................................21, 22

*General Motors Acceptance Corp. v. Norstar Bank of Hudson Valley*,
549 N.Y.S.2d 862 (3d Dep't 1989) .........................................................................10

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
313 F. 3d 70 (2nd Cir. 2002).................................................................................19

*Koehler v. Bank of Bermuda*, 577 F.3d 497, 499
 (2d Cir. 2009) ....................................................................................................16

*Pac Re 5-AT v. Amtrust N. Am., Inc.*,
No. CV-14-131-BLG-CSO, 2015 WL 2383406, at *1 (D. Mont. May 13, 2015) ...................23

*Peacock v. Thomas, 516 U.S. 349, 359 (1996)* ............................................20, 22, 24


**State Cases**

*CDR Creances S.A.S. v. First Hotels &  Resorts Invs., Inc.*,
34 N.Y.S.3d 32  (1st Dep't 2016) .............................................................................9

 *City of New York v. Lead Industries Ass'n, Inc.*,
222 A.D.2d 119 (1st Dep't 1996).............................................................................23

*Eiduson Fuel & Hardware Co. v. Drew*,
59 A.D.2d 1025 (4th Dep't 1977)............................................................................16

*Frummer v. Hilton Hotels Int'l.,*
19 N.Y.2d 533 (1967) .......................................................................................17

*Irving & William H. Stark, Inc. v. Milberg Factors, Inc.,*
38 A.D.2d 526 (1st Dep't 1971).........................................................................2

*McDermott v. City of N.Y.,* 50 N.Y.2d 211 (1980) ...........................................23

*Frummer v. Hilton Hotels Int'l.,* 19 N.Y.2d 533 (1967)....................................3

*Metro Aviation, Inc. v. U.S.,* 371 Mont. 64 (2014) ...........................................23

*Oil City Petroleum Co., Inc. v. Fabac Realty Corp.,*
70 A.D.2d 859 (1st Dep't 1979) .........................................................................16

*Stewart v. Volkswagen of Am. Inc.,*
81 N.Y.2d 203 (1993) ........................................................................................16

*Triangle Pacific Building Products Corp. v. National Bank of North America,*
404 N.Y.S.2d 121 (2d Dep't 1978).....................................................................10

**Federal Statutes**

Fed. R. Civ. P. 56.................................................................................................2
Fed. R. Civ. P. 69.................................................................................................3

**State Statutes**

CPLR  § 27-1-703 ................................................................................................2
CPLR § 301 ..........................................................................................................16, 17
CPLR § 302 ..........................................................................................................16, 18
CPLR § 304 ..........................................................................................................16
CPLR § 5201 ........................................................................................................7, 8, 18
CPLR § 5221 ........................................................................................................7, 8
CPLR § 5225 ........................................................................................................7, 8, 9, 15
CPLR § 5227 ........................................................................................................7, 8, 9, 15, 21
Mont. Code. Ann. § 27-1-703 .............................................................................23

## PRELIMINARY STATEMENT

Respondent Safebuilt Insurance Services, Inc. ("SIS") respectfully submits this memorandum of law in opposition to Petitioners AmTrust North America, Inc. ("AmTrust") and Technology Insurance Company, Inc.'s ("TIC") motion for a turnover order, and in support of Respondent's cross-motion to dismiss the Petition (the "Cross-Motion"). Petitioners' Motion for a Turnover Order (the "Motion") and the Petition on which it relies are fatally flawed on substantive and procedural grounds.

As a threshold matter, this Court lacks jurisdiction to enforce Petitioners' judgment against SIS, which is a California corporation that is not subject to personal jurisdiction in New York. Additionally, Petitioners are seeking a determination of new and undecided issues that do not fit within the Court's ancillary jurisdiction.

In support of the Petition, Petitioners rely on the Participation Agreement (ECF No. 5-6) though neither Petitioners nor SIS are parties to that agreement. Petitioners also assert new claims of negligence and vicarious liability against SIS based upon an incorrect, disputed, and non-final calculation of fees charged by SIS that are unreliable at best and should not have been presented to this Court by Petitioners as final or meaningful in anyway.

Although presented as a special proceeding to enforce the judgment entered against Pacific Re, Inc. ("Pac Re") and Pac Re 5-AT ("Cell 5") in the ongoing arbitration between those entities and Petitioners, in reality this most recent of Petitioners' serial filings is simply an end-run around Petitioners' prosecution of its claims against SIS in *AmTrust North America, Inc., et al. v. Safebuilt Insurance Services, Inc., et al.*, No. 14-cv-9494 pending before Your Honor (the "SDNY Litigation"). Petitioners have used this Court (and other jurisdictions) to attempt to bypass the flaws in the claims asserted in the SDNY Litigation. Federal District Courts do not

exist at the pleasure of Petitioners to forum shop.  Petitioners should not be rewarded for over-complicating this matter, misrepresenting the nature of disputed issues, and wasting party and judicial resources in the process.

The Petition should be dismissed in its entirety.

## STATEMENT OF FACTS

### I.    Relevant Factual Background

Petitioners are part of an insurance/reinsurance program aimed at providing "A-rated" insurance to small and mid-sized contractors (the "AmTrust Program").  *See* Declaration of Brian A. Bender ("Bender Decl."), Ex. "A" ("Sec. Am. Compl."), ¶¶ 5, 24.  The program was designed such that non-party United Specialty Insurance Company ("USIC") would "front" the program reinsured by TIC.  TIC, in turn, was reinsured by Cell 5, a protected captive cell of non-party Pac Re, a Montana captive reinsurance company, for the first $250,000 of all losses and loss of $250,000 up to 16% of gross written premium, subject to an annual minimum of $800,000.  *See* Sec. Am. Compl., ¶ 25; Bender Decl. Ex. "B," Art. 5.  The AmTrust Program began to issue policies on October 1, 2010.  *See* Sec. Am. Compl. ¶ 24.

Cell 5, the reinsurer of TIC, *see* Sec. Am. Compl., ¶ 25, was created specifically for the AmTrust Program in a Participation Agreement effective October 1, 2010.  *See* Bender Decl., Ex. "C" at 1.  While the Participation Agreement states that Cell 5 was created for SIS as the "participant," SIS, significantly, did not execute the Participation Agreement.  *Id*. at 9.  Rather, the Participation Agreement that created Cell 5 was executed solely by Pac Re and by Pac Re on behalf of Cell 5.  *Id*. at 9.

The Participation Agreement identifies Pac Re as a "captive insurance company organized under the laws of the State of Montana" and states that the agreement was approved by

Pac Re's regulator, the Montana State Auditor's Office.  *Id.* at 1.  The Participation Agreement, unsurprisingly, includes a choice of law provision designating Montana law as governing the terms thereof.  *Id.* at 8.

Petitioners appointed Respondent as their managing general agent for the AmTrust Program.  *See* Sec. Am. Compl., ¶¶ 15, 25.  Respondent's appointment was reduced to two General Agency Agreements.  *See* Bender Decl., Ex. "D" at ¶ 1.01.  The General Agency Agreements include choice of law provisions selecting Texas law, and venue provisions mandating Texas as the venue for adjudication of disputes.  *Id.* at ¶ 8.01.

On December 29, 2011, Petitioners notified Respondent that they were invoking the right to terminate the AmTrust Program.  *See* Sec. Am. Compl., ¶ 36.

## II.   Relevant Procedural History

### A.   Arbitration Demand

On September 8, 2014, Petitioners served non-parties Pac Re and Cell 5 with a demand for arbitration under the Captive Reinsurance Agreement.  *See* Sec. Am. Compl., ¶ 44.  In the arbitration, which is pending, Petitioners seek to recover collateral and unreimbursed fees for third-party claims handling from Pac Re and Cell 5.  *See* Sec. Am. Compl., ¶ 40.  Pac Re and Cell 5 objected on the grounds that the demand was improper, given Montana law governing protected cell captives.

### B.   The Montana Action

On October 1, 2014, Pac Re and Cell 5 filed a declaratory judgment action in the United States District Court for the District of Montana (the "Montana Action") seeking clarity on Montana's protected cell captive law.  *See* Sec. Am. Compl., ¶ 45.  Pending a decision in the

Montana Action, Petitioners and non-parties Pac Re and Cell 5 agreed to stay the arbitration.  *See* Bender Decl., Ex. "E."

Thereafter, in the Montana Action, Petitioners cross-moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order declaring Pac Re as a proper party to the demanded arbitration.  *See* Bender Decl., Ex. "F" at 1.  In support of their motion, Petitioners argued that, *inter alia*, Cell 5 was not a validly created protected cell under Montana law.  *Id.* at 15.  According to Petitioners' argument, Montana law defines a "participant" as an entity that is insured by a protected cell captive insurance company through a "participant contract."  *Id.* at 15.  **Thus, Petitioners' argued, SIS was not the "participant" of the Participation Agreement for Cell 5 because SIS was not the insured of Pac Re or Cell 5.**  *Id.* at 16.  Petitioners also argued that the Participation Agreement was not a "participant contract" under Montana law.  *Id.* at 16 ("Thus, SIS, is not a "participant" and the Participation Agreement is not a "participant contract" as defined under Montana law.").

Petitioners reiterated this argument in reply to Pac Re and Cell 5's opposition.  *See* Bender Decl., Ex. "G."  According to Petitioners, there was no evidence that Respondent was an insured of Pac Re.  *Id.* at 9.  Without such evidence, Respondent "cannot be a participant."  *Id.* at 9.

On May 13, 2015, the Honorable Carolyn S. Ostby, U.S.M.J., ruled on this "issue of first impression under Montana law" – whether Pac Re was a proper party to the arbitration demand by Petitioners.  *See* Bender Decl., Ex. "H" at 10, 12.  Based on its interpretation of Montana law, the court concluded that, under the plain meaning of the statutory language, Pac Re was subject to the arbitration.  *Id.* at 11-12.  Significantly, **the court did not make any determination with respect to the Participation Agreement and the terms thereof.**  *Id.*  In fact, the court

specifically held that, since its decision was based on the plain meaning of the statutory language related to the creation of protected cells, it "need not reach the remaining arguments presented by the parties." *Id.* at 12. Further, when the parties were again before Magistrate Judge Ostby several months later for oral argument regarding a motion to enforce a subpoena to the Montana Commissioner of Securities and Insurance, Magistrate Judge Ostby noted that her decision was "based on the precise issue presented," *i.e.*, whether or not Pac Re was subject to arbitration. *See* Bender Decl., Ex. "I" at 33:3-11, 13-21.

After the decision in the Montana Action, the arbitration re-commenced on or about May 21, 2015.

### C.      The SDNY Litigation

Rather than await the lifting of the agreed-upon arbitral stay, Petitioners commenced the action *AmTrust North America, Inc. et al. v. Safebuilt Insurance Services, Inc., et al.*, No. 14-cv-9494, assigned to Your Honor (the "SDNY Litigation"). In the SDNY Litigation, Petitioners effectively allege that Respondent (and several other entities and individuals) are liable for the amounts claimed against Pac Re and Cell 5 in the arbitration. *See* Sec. Am. Compl., ¶¶ 27(c), 41, 69, 79, 83, 89, 124.

The operative complaint in the SDNY Litigation includes allegations based on both the Participation Agreement and the General Agency Agreements, which also form the basis of the Petition. For example, in the SDNY Litigation, with respect to the Participation Agreement, Petitioners allege that Cell 5 was created to reinsure the obligations of the AmTrust Program and that Respondent was its "beneficial owner." *See* Sec. Am. Compl., ¶ 28. Petitioners also allege that Respondent is the "participant," *see* Sec. Am. Compl., ¶ 31, despite arguing in the Montana Action that Respondent was not the participant. Further, in the SDNY Litigation, Petitioners

allege Respondent breached the Participation Agreement and is liable to Petitioners under the terms of the Participation Agreement, the same relief Petitioners seek in the instant application. *See* Sec. Am. Compl., ¶¶ 58-79.  Similarly, the allegations in the operative complaint in the SDNY Litigation rely heavily on the terms of the General Agency Agreements.  Petitioners refer to Respondent as their general agent for the AmTrust Program.  *See* Sec. Am. Compl., ¶¶ 2, 15. In the SDNY Litigation, Petitioners also rely on language from the General Agency Agreement regarding Respondent's alleged obligation to indemnify Petitioners.  *See* Sec. Am. Compl., ¶¶ 6, 26, 27(c), 48, 58-69.   Further, Petitioners seek recovery of fees allegedly collected by Respondent that were due Petitioners, which are also sought by Petitioners in the instant application.  *See* Sec. Am. Compl., ¶¶ 56, 113-119.

Significantly, Petitioners have <u>not</u> established the validity of these allegations.  The Participation Agreement and the issue of fees allegedly charged during the AmTrust Program are the subject of expert discovery that is in progress.

### D.      Interim Arbitration Award

As discovery in the arbitration and SDNY Litigation commenced, Petitioners moved the arbitral panel for an order directing Pac Re and Cell 5 to post a security bond for the full value of their claimed damages in the arbitration.  *See* Bender Decl., Ex. "J."  Pac Re was unable to do so, and on September 9, 2015, the arbitral panel entered an interim award against Pac Re and Cell 5. *See* Bender Decl., Exs. "K" and "L."   The arbitral panel's interim award includes the same damages Petitioners seek in the SDNY Litigation and from Respondent – specifically, collateral allegedly required to adequately fund the loss funds for the Program and unreimbursed fees paid to the third-party claims administrator.  *Id.*

On September 22, 2015, Petitioners commenced a special proceeding in the Southern District of New York to confirm the interim arbitration award against Pac Re and Cell 5 under the matter *AmTrust North America, Inc. and Technology Insurance Company, Inc. v. Pacific Re, Inc. and Pac Re 5-AT*, No. 15-cv-7505 (CM).   On March 25, 2015, this Court granted the petition and confirmed the interim award against Pac Re and Cell 5.  *See* Bender Decl., Ex. "M." A judgment was entered against non-parties Pac Re and Cell 5 by the Clerk of this Court.  *See* Bender Decl., Ex. "N."  This matter allegedly flows from that judgment.

## ARGUMENT

The Petition is procedurally and substantively flawed: (1) this Court lacks jurisdiction to rule on the Petition, and (2) even if jurisdiction were proper, bona fide factual disputes preclude entry of the summary relief sought.

Rule 69(a) of the Federal Rules of Civil Procedure governs execution on a judgment, which is the purported basis of Petitioners' action.  Fed. R. Civ. P. 69(a); *Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.*, 190 F.3d 16, 20 (2d Cir. 1999); *see* Petition at 1. That Rule mandates that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located . . . ."  Fed. R. Civ. P. 69(a).  As such, by operation of the Federal Rules, New York law applies to this matter.  *Alliance Bond Fund, Inc.*, 190 F.3d at 20.

Petitioners cite to four statues under which they assert their "turnover" rights:   CPLR 5201(a), 5221(a), 5225(b),and 5227.  In relevant part:

- CPLR 5201(a) mandates that "[a] money judgment  may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor . . . unless it is exempt from application to the satisfaction of the

judgment." That provision notes that "[a] debt may consist of a cause of action which could be assigned or transferred accruing within or without the state."

- CPLR 5221(a) defines the court wherein jurisdiction is proper for these claims.

- CPLR 5225(b) notes that "[u]pon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest . . . where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money. . . ." That provision requires that "[n]otice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons" and that "[t]he court may permit the judgment debtor to intervene in the proceeding."

- CPLR 5227 similarly notes that "[u]pon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon maturity. . . ." That provision, like CPLR 5225(b), requires that "[n]otice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons . . . ."

Summarily, these provisions suggest that a "turnover" action is appropriate where a judgment creditor is seeking to collect on a debt owed to a judgment debtor by a third-party. *See, e.g.*, *Alliance Bond Fund, Inc.*, 190 F.3d at 20.

Here, Petitioners' turnover claim is inappropriate because it improperly presents complex claims based on disputed facts that are the subject of ongoing litigation (before Your Honor) as

8

simple collection issues in an enforcement proceeding, in an attempt to bypass a determination of fundamental, heavily disputed issues.

In any event, a turnover claim, like any other claim in New York state or federal court, is subject to jurisdictional limitations and procedural propriety.   Petitioners complete neglect of procedural propriety – evidenced by their apparent failure to serve Pac Re, the judgement debtor, as required by CPLR 5225(b) and 5227 – compounds Petitioners' failure to bring this action in a proper court, *i.e.* one that can assert personal jurisdiction over SIS.  *CDR Creances S.A.S. v. First Hotels & Resorts Invs., Inc.*, 34 N.Y.S.3d 32, 36 (1st Dep't 2016) (dismissing petition under CPLR 5225 for lack of "jurisdiction . . . based on CPLR 302(a)(1) and (4)").

Thus, even assuming that the turnover proceeding was proper, this action is not properly before this Court.  Pac Re's claim against SIS, if any, is one between a Montana corporation and California entity, based on an insurance program governed by the State of Montana and that had not a single New York policyholder.   The Participation Agreement, on which Petitioners rest their claim for relief, contains no choice of law or choice of venue provision that suggests New York is the proper venue for this action.   While it is true that Petitioners are New York entities, that fact, standing alone, does not vest this Court with jurisdictional authority over SIS.

Accordingly, Petitioners' Motion should be denied, and the Petition should be dismissed.

## I.      PETITIONERS ARE NOT ENTITLED TO A TURNOVER ORDER

Pursuant to New York law, a bona fide issue of fact precludes the issuance of a turnover order by summary determination and mandates a trial on disputed facts before a turnover order can be granted.  *General Motors Acceptance Corp. v. Norstar Bank of Hudson Valley*, 549 N.Y.S.2d 862, 863 (3d Dep't 1989) ("Although a court may grant summary relief where there are no questions of fact in a special proceeding (CPLR 409[b]), it must first conduct a trial on

disputed issues of fact on adverse claims in a turnover matter."); *Triangle Pacific Build. Prods. Corp. v. Nat'l Bank of N. Am.*, 404 N.Y.S.2d 121, 122 (2d Dep't 1978); *Irving & William H. Stark, Inc. v. Milberg Factors, Inc.*, 38 A.D.2d 526 (1st Dep't 1971)..  Here, each of Petitioners' claims are based on facts that are so unsettled that the parties to the SDNY Litigation have retained experts to assist with the presentation of their arguments.  Rather than adjudicate in that proceeding, Petitioners bring this action to try and fill the gaps in the pending SDNY Litigation. The nature of this proceeding is not candidly stated, nor are the facts upon which it is based. Because each of Petitioners' claims rely on factual issues that are the subject of bona fide and complex disputes, turnover cannot be ordered.

### A.  Indemnity Is Improper Because of Bona Fide Factual Disputes Regarding The Relevant Contract

Petitioners cannot be granted summary relief on their indemnity claim because there is a bona fide dispute as to whether SIS assented to the Participation Agreement as the "participant". Petitioners ignore this, and ignore the simple fact that the document was executed by Pac Re and Cell 5, and not by any party to this proceeding.  In addition, contrary to Petitioners' argument to the contrary, no court has determined that SIS is the "participant," and Petitioners citations to the factual record are not conclusive (nor entirely accurate).

Petitioners argue that SIS is the "Participant" because of language in the decretal paragraph of the Participation Agreement.  *See* Bender Decl. at Ex. "C" at 1.  Petitioners acknowledge that SIS did not execute the Participation Agreement, but dismiss this important fact by explaining, <u>in a footnote</u>, that this must have been a "clerical error."  *See* Motion at 5. Petitioners' argument ignores that the Participation Agreement was fully executed, and that the only two signature blocks in the agreement are for Pac Re and Cell 5.

Petitioners attempt to dismiss of the absence of SIS's signature on the Participation Agreement because David Pike, an SIS officer and director, signed the Participation Agreement. *See* Petition at ¶ 29.  While it true that David Pike signed the Participation Agreement, it is clear from the face of the document that he did so on behalf of the non-SIS entities for which he is an authorized signatory.  *See* Petition at ¶ 16.  By attempting to impart the assent of other parties to SIS, Petitioners are seeking to supplement (and seek a summary determination on) an alter ego argument that remains undecided before Your Honor in the SDNY Litigation.  The fact that David Pike signed the Participation Agreement in his non-SIS capacity does not bind SIS any more than it binds other companies which David Pike is an authorized signatory, or David Pike individually.

Petitioners also present dicta in an order from the District of Montana as a "determination" from the Court that SIS is the "Participant."  *See Pac Re 5-AT v. Amtrust N. Am., Inc.*, No. CV-14-131-BLG-CSO, 2015 WL 2383406, at *1 (D. Mont. May 13, 2015).  The language cited by Petitioners is contained solely in the "Background" section of the Court's decision and is completely unrelated to the sole issue before the District of Montana - whether or not Pac Re and Cell 5 were subject to arbitration.  *Id*.  In fact, in a subsequent discussion of that ruling, Judge Otsby noted that the decision was "based on the precise issue presented," relegating Petitioners' "support" for SIS as the Participant as mere dicta, and a far cry judicial determination.  *See* Bender Decl., Ex. "I" at 33:3-11, 13-21.

Petitioners rely on testimony from fact witnesses in the SDNY Litigation, which at best creates an issue of fact precluding summary relief.  *See* Motion at 6.  For example, Petitioners claim that Taft's deposition testimony "further confirmed" the decision in the Montana Action that Respondent is the "participant."  *See* Motion at 6.  Taft's deposition testimony is, however,

11

merely that – fact witness deposition testimony regarding facts at issue in the SDNY Litigation. It does not, as Petitioners allege settle or resolve any issues.  Similarly, the testimony of the Montana State Auditor regarding its understanding of who the participant of the Participation Agreement was does not definitively establish this fact such that the summary relief sought by Petitioners is warranted.

**B.     Petitioners' Negligence Claim Is Based on Misrepresentations**

Petitioners' negligence claim is premised upon flagrant misrepresentations.  Contrary to Petitioners misrepresentation that a jointly retained vendor calculated the fees for the Program at $10,701.892.41, Petitioners unilaterally calculated the fees.  Petitioners also blatantly omit that Respondents have challenged Petitioners miscalculation of fees as based upon faulty and incomplete data. *See* Bender Decl., Exs. "S", "T", "U", "X."

On March 17, 2016 the parties in the SDNY Litigation had a court conference before U.S. Magistrate Judge Cott wherein he ordered the parties to meet and confer on retaining Special Counsel, a joint fee vendor, to calculate the fees charged on the AmTrust Program.  *See* Bender Decl., Ex. "P" at 55:20-56:1.  As a result, the parties in the SDNY Litigation conducted a meet-and-confer on May 3, 2016 and agreed to jointly retain Special Counsel, through Charles Roberts, Project Manager of DiscovereQ, as an expert to calculate the fees collected by SIS during the AmTrust Program.  Special Counsel reviewed 35,000+ bound policy files and produced an excel spreadsheet on May 5, 2016 that calculated the amounts charged for policy fees, additional insured fees, inspection fees, PCA fees, association fees ("Fees"), pure premium ("Pure Premium"), taxes/fees ("Taxes"), and brokerage fees ("Broker Fees") for each reviewed policy.  *See* Bender Decl., Ex. "Q."  Special Counsel produced a second excel sheet on May 24, 2016 that consisted of the same information except for total calculations for Pure Premium,

Taxes, Fees, and Broker Fees.  *See* Bender Decl., Ex. "R."  Neither Special Counsel's May 15 Excel sheet nor the May 24 Excel included a "Total Fees Denuded" in the amount of $10,701,892.41 as depicted in Petitioners' self-serving Exhibit 6.

Upon review of Special Counsel's May 24 excel spreadsheet, SIS identified approximately 874 duplicate insurance policies that were counted twice.  On July 26, 2016, SIS notified Petitioners and Special Counsel that the duplications overstated fees charged by SIS by $1,448,025.02.  *See* Bender Decl., Ex. "S."  On July 27, 2016, SIS sent Special Counsel and Petitioners a list, identifying by Bates-numbers the duplicate policies that caused the fees to be significantly overstated.  *See* Bender Decl., Ex. "T."  SIS conducted a conference call with Petitioners and Special Counsel to explain the miscalculation and overstatement of fees and requested Special Counsel double-check and eliminate the duplicate policies identified by SIS. Petitioners reviewed approximately 20 of the duplicate polices identified by SIS and claimed that some, not all, were renewed policies.  SIS reviewed its initial list of duplicate policies and agreed that approximately 200 of the 874 policies were renewed, but reiterated that Special Counsel's fee calculation was overstated by duplicate inclusion of the remaining 600+ policies.

On August 5, 2016, the parties conducted an on-the-record meet-and-confer to discuss a plan for moving forward with Special Counsel in order to reach an accurate account for the fees charged by SIS.  *See* Bender Decl., Ex. "U" at 33-57.  During the meet-and-confer, Petitioners acknowledged that Special Counsel's policy count seemed inaccurate and acknowledged that Special Counsel did not consider canceled policies when calculating the fees charged on the AmTrust Program.  *Id.* at 36:14-20, 43:21-46:15, 48:8-18.  Moreover, SIS notified Petitioners that Special Counsel had mistakenly included "Broker Fees" in the fee calculation, notwithstanding that the "Broker Fees" were in fact collected by the retail brokerage agencies

who directly interface with policyholders, and are in fact neither received nor distributed by SIS. *See* Bender Decl., Ex. "W."

To date, the parties have not reached an agreement as to the total amount of fees charged on the AmTrust Program and/or a statement of work for Special Counsel to correctly calculate the Fees; as of yesterday, counsel were exchanging emails to try and figure out how to resolve these issues. Despite the parties' continuous back and forth regarding Special Counsel's inaccurate calculations and SIS's clear objection to the use of Special Counsel's data entries, Petitioners represented, to this Court, the total for Fees as undisputed and jointly calculated. This is a complete misrepresentation.

This is not Petitioners first attempt to deceitfully disguise Exhibit 6, which contains the miscalculated total for fees, as a "Joint Report". On August 10, 2016, Petitioners introduced Exhibit 6 as a deposition exhibit during the deposition of SIS Rule 30(b)(6) by Phillip Salvagio in the SDNY Litigation and misrepresented the document to be created and provided to both parties by a "jointly retained vendor called special counsel." *See* Bender Decl., Ex. "V" at 161:15-162:6 (Petitioners' Exhibit 6 was marked as Plaintiffs' Exhibit 324 during the 8/10/16 deposition). Despite Petitioners' on-the-record representations that Exhibit 6 had been produced to SIS by the jointly retained vendor, SIS had never seen Exhibit 6 prior to the deposition. On August 15, 2016 SIS emailed Special Counsel to determine whether Exhibit 6 was created and produced by Special Counsel. To date, SIS has not received a response from Special Counsel, though on August 16, 2016, Petitioners' counsel responded in place of Special Counsel by admitting that counsel, not Special Counsel, created Exhibit 6, admitting that counsel "added a summary report to Charles' [Special Counsel's] database because we filed it with correspondence to the court sometime in June . . . . I used excel's auto sum feature to break out

14

the line items." *See* Bender Decl., Ex. "W."  Nevertheless, Petitioners knowingly misrepresented to this Court the policy fee total of $10,701,892.41 to be a "Joint Report" calculated by SIS and Petitioners' "jointly retained" vendor.

### C.      Vicarious Liability Is Improper

Petitioners' vicarious liability claim is based on the same disputed facts as the indemnity claim.  As Petitioners themselves have argued in a sworn pleading that SIS cannot be the "participant," it is completely disingenuous for them to now assert a claim of vicarious liability against SIS based on its status as the purported "participant."  Alternatively, Petitioners appear to be making an alter ego argument that is also based on disputed facts.  Whatever the basis of the vicarious liability claim is, it is not appropriate for summary relief as it is based on disputed issues.

## II.     THE PETITION IS JURISDICTIONALLY DEFICIENT BECAUSE PETITIONERS FAILED TO SERVE PAC RE AND CELL 5

The statutory sections that create the claims that form the basis for Petitioners' alleged right of recovery are clear in their requirements as they relate to the judgment debtor:  the judgment debtor must be served with the petition.  *See* CPLR 5225(b), 5227.  In fact, both of those provisions go so far as to give the judgment debtor the right to intervene, *see id.*, a right that cannot be exercised in the absence of service.

Service on the judgment debtor is not mere window dressing: failure to serve the judgment debtor "is not a mere procedural irregularity but rather renders the proceeding jurisdictionally defective."  *Oil City Petroleum Co., Inc. v. Fabac Realty Corp.*, 70 A.D.2d 859, 859 (1st Dep't 1979) (citing *Eiduson Fuel & Hardware Co. v. Drew*, 59 A.D.2d 1025 (4th Dep't 1977) and CPLR § 304).

In *Oil City*, the turnover petition resulted in an order against the appellant.  70 A.D.2d at 859.  On appeal, the court reversed the turnover order, holding that, since CPLR 5225 and 5227 require notice of the proceeding to the judgment debtor in the same manner as a summons, the failure to serve notice of the petition was a fatal jurisdictional defect.  *Id*.  Similarly, in *Eiduson*, the appellant appealed from an order directing him to turnover a stock certificate he held under an attorney's retaining lien.  59 A.D.2d at 1025.  The court noted that, based upon its review of the record, the judgment debtor was not properly served with notice of the proceeding and, therefore, did not participate in the proceeding or consent to the court's order.  *Id*.  Thus, the court reversed the turnover order to allow for proper notice to the judgment debtor or a motion to dismiss if they were not added.  *Id*. at 1026.

Review of the docket confirms that Petitioner did not serve the Pac Re, the judgment debtor; that fact alone is sufficient to mandate dismissal of the Petition.

## III.   THE COURT LACKS PERSONAL JURISDICTION OVER SIS

SIS is not subject to jurisdiction in New York State for this claim.

As with any other claim, personal jurisdiction over a judgment debtor or a garnishee is a prerequisite to a turnover order.  *Koehler v. Bank of Bermuda*, 577 F.3d 497, 499 (2d Cir. 2009). It is a *plaintiff's* burden to prove that statutory and due process prerequisites have been satisfied. *Stewart v. Volkswagen of Am. Inc.*, 81 N.Y.2d 203, 207 (1993).

For a court to have jurisdiction over a non-domiciliary defendant, the defendant must be either "present" in the State of New York pursuant to CPLR § 301, or subject to New York's long-arm statute, CPLR § 302.  *Estate of Ungar v. Palestinian Authority*, 400 F. Supp. 2d 541, 549 (S.D.N.Y. 2005).   Additionally, any exercise of jurisdiction must comply with the requirement that the defendant have minimum contacts with the forum pursuant to the Due

Process Clause of the Fourteenth Amendment. *Id.* In this case, SIS is not subject to personal jurisdiction based on CPLR §§ 301 or 302, does not have the requisite minimum contacts with New York, and cannot and should not be compelled to appear in this action in this state.

SIS, the party against whom Petitioners seek recovery, is a California corporation. SIS is domiciled in California, and has its principal (and sole) place of business in California. SIS has no offices, officers, employees (other than two staff counsel that work from their residences), or assets in the state of New York. In short, SIS is a non-domiciliary defendant with no meaningful contacts to or in the state of New York.

Neither the residence of the judgment debtor nor the situs of the allegedly underlying claim support jurisdiction in this Court. Pac Re, the entity one whose behalf Petitioners attempt to assert a claim against SIS, is a Montana corporation domiciled in Montana. Pac Re has no offices, officers, employees, or assets in the state of New York. Like SIS, Pac Re is a non-domiciliary party with no meaningful contacts to the state of New York.

As such, dismissal is mandated.

### A.      SIS is Not Subject To Jurisdiction Under CPLR § 301

SIS lacks the continuous, permanent, and substantial presence in the State of New York to merit a finding of general jurisdiction pursuant to CPLR § 301. *Estate of Ungar*, 400 F. Supp. 2d at 550. To determine whether a defendant is subject to general jurisdiction in New York, courts apply a pragmatic test focusing on factors including (1) the existence of an office in New York, (2) the solicitation of business in New York, (3) the presence of bank accounts and other property in New York, and (4) the presence of employees in New York. *Frummer v. Hilton Hotels Int'l.*, 19 N.Y.2d 533 (1967).

SIS is a Corporation formed under the laws of the State of California, headquartered in California.  SIS does not maintain an office in New York, does not solicit business in New York, does not have any property or assets in New York, and does not have any employees in New York other than two staff attorneys who work from their residences that happen to be located in New York.  Accordingly, SIS is not "present" in the State of New York and is not subject to general jurisdiction here.

### B.       SIS is Not Subject To Specific Jurisdiction Under CPLR § 302(a)

SIS is similarly not subject to specific jurisdiction pursuant to CPLR § 302(a).  New York's long-arm statute allows for personal jurisdiction over foreign corporations that are doing business within the state for causes of action that arise out of that business done within the state. CPLR § 302(a).  CPLR § 302(a) states in relevant part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> > (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> >
> > (2) commits a tortious act within the state . . . or
> >
> > (3) commits a tortious act without the state causing injury to person or property within the state  . . . if he
> >
> > > (i) regularly does or solicits business, or engages in any other persistent source of conduct, or derives substantial revenue from goods used or consumer or services rendered, in the state, or
> > >
> > > (ii) expects or reasonably should expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

None of the actions alleged in the Petition give rise to jurisdiction over the non-domiciliary entity SIS under CPLR 302(a).

18

### C.     The Claims Alleged Have No Nexus to New York

Petitioner's claims are allegedly based on CPLR 5201, which permits a money judgment to be enforced against a debt owed to the judgment debtor.  The crux of this statute is that a party seeking to enforce a judgment stands in the shoes of the judgment debtor to collect on debts owed to the judgment debtor.  *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F. 3d 70, 83 (2d Cir. 2002).

The Participation Agreement (which was not executed by SIS), is between two Montana entities (Pac Re, Inc. and Cell 5) and relates to an insurance Program regulated by Montana, and governed by Montana law.  *See* Bender Decl., Ex. "C."  Even if Petitioners are correct that SIS was a party to the Participation Agreement, that argument is unavailing as a basis for asserting New York jurisdiction over SIS: SIS is not a New York domiciliary.  Standing in the shoes of Pacific Re does not give Petitioners the ability to make improper use of the jurisdictional reach of this Court; subjecting SIS to these claims means asserting them in California.

The Petition alleges that SIS is obligated to fund all liabilities of Cell 5 pursuant to the Participation Agreement, including the liabilities of the AmTrust Program that resulted in Petitioners' judgment against Cell 5.  *See* Petition at ¶ 19.  According to Petitioners, SIS was supposed to sign, and is thus bound by, the terms of the Participation Agreement.  *See* Petition at ¶¶ 27-28.  Putting aside the obvious fact that SIS did not in fact sign the document and that its application as against SIS is heavily in dispute, under Petitioners' construction of the contract, it is an agreement between a California entity and a Montana entity; there is still no connection or relation to New York State.

As it stands, the document is between two Montana entities – again, without connection to New York.  As such, any obligations of the "Participant" to Pac Re could not possibly be tied to any act that occurred in New York.

There are additional practical considerations at play.  The insurance/reinsurance program at issue involved the issuance of insurance policies to insureds in as many as 38 states.  *See* Bender Decl., Ex. "X" ("Eligible Territory").  It is not disputed that the Program excluded policies in New York State, and it is further not disputed that no policies in fact were written in New York.  *Id*. ("All 50 States Except: …New York…").  As such, the Program, facially, had no connection to New York: the AmTrust Program involved no insurance policies issued in New York, and zero dollars in insurance premiums paid by any New York insureds.

None of the allegations in the Petition implicate actions, transactions, or incidents that took place in New York.  There is no specific jurisdiction over SIS for the purposes of this action.  New York has no specific jurisdiction over non-domiciliary SIS regarding the allegations that it owes money to non-domiciliary Pacific Re based on a contract governed by Montana law.  The Petition must be dismissed.

## IV.     THE COURT LACKS SUBJECT MATTER JURISDICTION

On a motion to dismiss for lack of subject matter jurisdiction, the burden is on the party asserting the claim to establish that the court has subject matter jurisdiction by overcoming the presumption that a cause of action lies outside the Court's limited jurisdiction.  *Estate of Ungar v. Orsacom Telecom Holding S.A.E.*, 578 F. Supp. 2d 536, 545 (S.D.N.Y. 2008) (McMahon, J.) ("*Ungar II*").  Although factual allegations asserted in the complaint are presumed to be true for the purposes of a motion to dismiss for lack of subject matter jurisdiction, jurisdiction cannot be

shown by drawing inferences from the pleadings that are favorable to the party asserting jurisdiction.  *Id.*

A District Court's ancillary jurisdiction to enforce its own judgments is a creature of necessity, but is only justified in extraordinary circumstances.  *Peacock v. Thomas*, 516 U.S. 349, 359 (1996).  The Supreme Court has "cautioned against the exercise of jurisdiction over proceedings that are entirely new and original, or where the relief sought is of a different kind or on a different principal that that of the prior decree."  *Id.* (internal quotation omitted).  Ancillary jurisdiction is permitted for "simple collection mechanisms," but not for situations where a new substantive theory is presented seeking to establish liability on the part of a party other than the judgment debtor.  *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 107 (2d Cir. 2001).

In *Epperson*, cited by Petitioners, the Second Circuit was faced with a challenge to the exercise of ancillary jurisdiction for a fraudulent conveyance action under Connecticut law.  *Id.* There, the Court held that the fraudulent conveyance action was a simple collection mechanism seeking to retrieve assets of the judgment debtor, not to impose liability on a party other than the judgment-debtor.  *Id.*  Fundamental to the Court's holding was that Connecticut law does not permit a party to impose liability for an underlying judgment on the recipient of a fraudulent conveyance or to reach the recipient's own assets.  *Id.*

After *Epperson*, this Court (McMahon, J) was presented with procedural issues strikingly similar to those presented herein: plaintiffs had been litigating their case for years, with multiple cases pending against various defendants and garnishees in several different courts, and were attempting multiple avenues to enforce a judgment against a party based on various iterations of alter ego claims, ultimately abandoning those alter ego claims and seeking turnover against a foreign entity pursuant to CPLR § 5227.  *Ungar II*, 578 F. Supp. 2d at 538 (McMahon, J.).  After

a thorough analysis of *Peacock* and *Epperson*, this Court ultimately held that ancillary jurisdiction over a third party would be inappropriate when the turnover proceeding "presents issues different from those underlying the judgment."  *Id*. at 550-551 (emphasis added).  In *Ungar II*, the turnover proceeding was based on amounts allegedly owed to the judgment debtor.  *Id*. at 550.  However, to determine whether the judgment debtor was in fact owed this money required the court to analyze issues that exceeded the scope of the judgment, namely to determine whether amounts owed to an entity affiliated with the judgment debtor were actually owed to the judgment debtor.  *Id*. at 550-551.  The Court recognized that plaintiffs was merely asserting the same alter ego claims that the *Ungar II* plaintiffs had been unsuccessful in prosecuting, masked as a turnover proceeding.  *Id*. at 551.

Here, Petitioners' reliance on to the general proposition in *Epperson* to the exclusion of Your Honor's own holding in *Ungar II* and the Supreme Court's holding in *Peacock* highlights the weakness in the Petition and Motion.  This Court of course has the power to enforce the judgment against Pac Re, but Petitioners are asking the Court to find ancillary jurisdiction where none exists.  Petitioner's claims require fundamental determinations of disputed issues, beyond those of simple collection mechanisms, and would require exercising ancillary jurisdiction over indemnity and negligence claims that are divorced from the underlying judgment entered against Pacific Re.

### A.    The Court Lacks Ancillary Jurisdiction Over Petitioners' Indemnity Claim

Petitioners' indemnity claim is not subject to ancillary jurisdiction because it seeks a determination under Montana law as to whether SIS assented to the Participation Agreement as the "Participant."  Unlike in *Epperson* – the only post-*Peacock* case cited by Petitioners with precedential authority – Petitioners are not attempting to utilize a simple collection mechanism.

22

Also unlike in *Epperson*, New York and Montana both permit causes of action for indemnity, meaning that Petitioners are not without recourse in the absence of ancillary jurisdiction. *See City of New York v. Lead Indus. Ass'n, Inc.*, 222 A.D.2d 119, 124 1st Dep't 1996); *McDermott v. City of N.Y.*, 50 N.Y.2d 211, 217 (1980); *accord Metro Aviation, Inc. v. U.S.*, 371 Mont. 64 (2014); Mont. Code. Ann. § 27-1-703.

To entertain the Petition, this Court would have to make significant and new factual determinations about the Participation Agreement, without jurisdiction to do so. Petitioners argue that SIS should be obligated to pay the judgment of Pacific Re because SIS is identified as the "Participant" in the decretal paragraph of the Participation Agreement despite Petitioners' acknowledgment that "[t]he Participation Agreement was not executed by Safebuilt." *See* Petition at 5 n. 5.

First, Petitioners argue that the lack of execution by SIS was a "clerical error." *Id.* Next, Petitioners argue that SIS's status as "Participant" was "confirmed by the United Stated [*sic*] District Court for the District of Montana, Billings Division, which recognized that: Pacific Re and Safebuilt Insurance Services, Inc. ("Safebuilt") entered into a Participation Agreement." *Id.* at 5-6 (internal quotation removed). The District of Montana made no such determination or confirmation, this statement was merely stated in the "background" section of the decision of a court who was not presented with this issue, and is therefore dicta. *Pac Re 5-AT*, 2015 WL 2383406, at *1. Finally, Petitioners rely on fact deposition testimony, which at best creates an issue of fact (in a different proceeding, nonetheless) as to whether SIS is a party to the Participation Agreement.

It is troubling that Petitioner attempts to present decretal language in a contract and background information in a court decision as "clear" evidence of SIS's liability. *See* Motion at

5-6.  It is equally troubling that Petitioner fails to mention that not only was the Participation Agreement not executed by SIS, the Participation Agreement was <u>fully executed</u> by the only two parties listed on the signature page – Pacific Re, and Cell 5.  *See* Participation Agreement (ECF 5-6) at 10.  Petitioners are essentially arguing that this was a mistake, mandating reformation. As such, they ask the Court to treat SIS as though it were a signatory to the Participation Agreement, despite the fact that it was not.  Motion at 5-7.  Alternatively, Petitioners argue that reformation is appropriate because the actual individual the signatory to the document happens to be affiliated with other corporate entities, including SIS.  *See* Petition at ¶ 29.  Regardless of the merits (or lack thereof) of these positions, Petitioners' arguments that SIS is the Participant seek relief "of a different kind or on a different principal that that of the prior decree."  *Peacock*, 516 U.S. at 359.  In fact, Petitioners' argument is nearly the same as the alter ego argument Your Honor rejected in *Ungar II*.  Accordingly "the exercise of ancillary jurisdiction in this action would be inappropriate."  *Ungar II*, 578 F. Supp. 2d at 551.

**B.     The Court Lacks Ancillary Jurisdiction Over Petitioners' Negligence Claim**

This Court similarly lacks ancillary jurisdiction over Petitioners' negligence claim.  The negligence claim would have this Court interpreting multiple contracts and California insurance law to determine whether SIS owes any amounts to Petitioners via Pac Re, or alternatively to Petitioners directly based on premiums charged by SIS.  Petitioners' theory of liability and relief sought are identical to the claims asserted against SIS in the SDNY Litigation, which require a determination of liability which present issues different from those underlying the judgment.

Petitioners' negligence claim relies on the interpretation of The General Agency Agreement ("GAA") and the Quota Share Agreements ("QSAs").  *See* Motion at 7.  The GAA was entered into between a Delaware insurance company (United Specialty Insurance

Company), a New Hampshire insurance company (TIC), and a California corporation (SIS).  The GAA contains a choice of law provision selecting Texas law, and an exclusive venue provision selecting a court in Tarrant County, Texas for all disputes.  *See* Bender Decl., Ex. "D" at §§ 8.01, 8.05.  The QSAs were entered into between the same parties, and also contain a choice of law provision selecting Texas law and a venue provision selecting a court in Tarrant County, Texas for all disputes.  Additionally, Petitioners rely on a California Department of Insurance Bulletin to support their negligence claim.

The negligence claim necessarily requires a determination of liability beyond the scope of the judgment, based on Texas or California law governing agreements that have nothing to do with the State of New York or any business transacted within the State of New York.  Whether or not SIS was permitted to charge fees is being adjudicated before Your Honor in another proceeding in which no fewer than two (and perhaps as many as four) experts will provide opinions.  Petitioners cannot reasonably and credibly characterize their negligence claim as a simple judgment enforcement mechanism.

### C. The Court Lacks Ancillary Jurisdiction Over Petitioners' Vicarious Liability Claim

Petitioners' vicarious liability claim is not subject to ancillary jurisdiction as it presents new issues from those underlying the judgment.  *Ungar II*, 578 F. Supp.2d at 550-551.  The vicarious liability claim is either based on purported obligations of SIS arising from the Participation Agreement which has no nexus to New York, or based on an alter ego argument being made by Petitioners.  *See* Petition at ¶¶ 49-51 (alleging that Pac Re and Cell 5 had no employees, and that SIS was acting on behalf of and for the benefit of Pac Re and Cell 5).  Under either theory of liability, this Court lacks ancillary jurisdiction over Petitioners' claim.

**<u>CONCLUSION</u>**

For the foregoing reasons, SIS respectfully requests that the Court enter an order: (1) denying Petitioners' Motion; (2) granting Respondent's Cross-Motion; (3) dismissing the Petition; and (4) for such other and further relief as the Court deems just and proper.

Dated: New York, New York
　　　　August 29, 2016

By:　　/s/ Brian A. Bender　　　　　　
　　　　Abbie Eliasberg Fuchs, Esq.
　　　　Brian A. Bender, Esq.
　　　　Peri A. Berger, Esq.
　　　　**HARRIS BEACH PLLC**
　　　　100 Wall Street, 23rd Floor
　　　　New York, New York 10005
　　　　Telephone: (212) 687-0100
　　　　Fax: (212) 687-0659
　　　　afuchs@harrisbeach.com
　　　　bbender@harrisbeach.com
　　　　pberger@harrisbeach.com
　　　　*Attorneys for Respondent*