OHRENSTEIN & BROWN, LLP
Matt Bryant (MB2408_
Zachary G. Schurkman (ZS1985)
1305 Franklin Avenue, Suite 300
Garden City, New York 11530
T: (516) 873-6334
F: (516) 873-8912

**REDACTED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of<br><br>AMTRUST NORTH AMERICA, INC. and<br>TECHNOLOGY INSURANCE COMPANY, INC.,<br>As  Judgment Creditors of PACIFIC RE, INC. on behalf<br>of its protected cell PAC RE 5-AT, Judgment Debtor,<br><br>                            Petitioners,<br>      -against-<br><br>SAFEBUILT INSURANCE SERVICES, INC.<br><br>                           Respondent. | Civil Action No.<br>Related Case Nos.:<br>15-CV-7505 (CM)<br>14-CV-9494 (CM) (JLT)<br><br>**NOTICE OF MOTION** |

---

**OMNIBUS MEMORANDUM OF LAW IN: (1) FURTHER SUPPORT OF
PETITIONERS' MOTION FOR JUDGMENT; (2) OPPOSITION TO RESPONDENT'S
MOTION TO DISMISS; AND (3) SUPPORT OF PETITIONERS' MOTION TO
DISQUALIFY HARRIS BEACH, PLLC FOR CONFLICTED CONCURRENT
REPRESENTATION**

---

**OHRENSTEIN & BROWN, LLP**
*Attorneys for Judgment Creditors*
1305 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 873-6334

On the Brief:
    Matt Bryant
    Zachary G. Schurkman

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

SUMMARY OF ARGUMENT ...................................................................................... 1

RELEVANT FACTS .................................................................................................... 2

    A.   Amended Judgment and Ongoing Arbitration.................................................. 2

        1.   Judgment Creditors' Pending Reserve Requests And Pacific Re's Actuarial Opinion .. 2

        2.   Arbitral Acknowledgement of Safebuilt's Role as Participant ....................... 3

    B.   Relevant Facts From Prior Montana Declaratory Judgment............................ 3

    C.   Agency Proceedings........................................................................................ 4

    D.   S.D.N.Y. Discovery Ownership and Control of Safebuilt, Preferred Global and Pac Re .. 5

        1.   Safebuilt's Role as Participant ..................................................................... 5

        2.   Safebuilt's New York Contacts ................................................................... 7

        3.   Safebuilt's Financial Records as General Agent For Judgment Creditors ..... 8

ARGUMENT ............................................................................................................... 9

POINT I ...................................................................................................................... 9

THERE IS NO REASONABLE DISPUTE THAT SAFEBUILT IS THE PARTICIPANT ........ 9

POINT II ..................................................................................................................... 12

HARRIS BEACH, PLLC SHOULD BE DISQUALIFIED FROM REPRESENTING
CONCURRENT ADVERSE INTERESTS.......................................................................... 12

POINT III .................................................................................................................... 16

THERE IS NO REASONABLE DISPUTE THAT THE AMOUNT OF FEES SAFEBUILT
DIVERTED FROM CELL 5 WOULD FULLY SATSIFY THE JUDGMENT ........................ 16

POINT IV .................................................................................................................... 18

SAFEBUILT'S JURISDICTIONAL DEFENSES ARE WITHOUT MERIT ............................ 18

    A.   COMPLETE DIVERSITY VESTS THIS COURT WITH SUBJECT MATTER
    JURISDICTION ............................................................................................. 19

    B.   SAFEBUILT IS SUBJECT TO PERSONAL JURISDICTION AS AN AUTHORIZED
    FOREIGN CORPORATION........................................................................... 20

    C.   PACIFIC RE CONSENTED TO ENFORCEMENT JURISDICTION IN NEW YORK . 22

CONCLUSION............................................................................................................ 23

<u>**TABLE OF AUTHORITY**</u>

Cases

*Cartwright v. Scheels All Sports, Inc.*,
 2013 MT 158, 370 Mont. 369, 310 P.3d 1080 (Mont. 2013) ................................... 11

*Cumberland Farms, Inc. v. Rian Realty, Ltd.*,
 No. CIV.A. CV04-3991 (DG) 2007 WL 1232072 (E.D.N.Y. Apr. 26, 2007) ....................... 11

*Eiduson Fuel & Hardware Co. v Drew*,
 59 A.D.2d 1025, 399 N.Y.S.2d 764 (4th Dep't 1977) ............................................. 22

*Epperson v. Entertainment Express, Inc.*,
 242 F.3d 100 (2d Cir. 2001) ...................................................................... 19

*Excelsior Capital LLC v. Allen*, No. 11 CIV.,
 No. 11 CIV 7373-CM, 2012 WL 4471262 (S.D.N.Y. Sept. 26, 2012) .................................. 12

*GSI Commerce Solutions, Inc. v. BabyCenter, LLC*,
 618 F.3d 204 (2d Cir. 2010) ................................................................. 12, 13

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
 313 F.3d 70 (2d Cir. 2002) ................................................................. 14, 19

*Kirschner v. KPMG LLP*,
 15 N.Y.3d 446, 912 N.Y.S.2d 508, 938 N.E.2d 941 (N.Y. 2010) ............................... 9

*Madison92nd Street Associates, LLC v. Marriott International, Inc.*,
 No. 13 Civ. 291(CM), 2013 WL 5913382 (S.D.N.Y. Oct. 31, 2013) ........................... 14, 15

*Melendez v. McCrowell*,
 139 A.D.3d 1018, 32 N.Y.S.3d 604 (App. Div. 2016) ........................................ 11

*Mija Assoc's v. Haliburton Svc's*,
 562 F. Supp 418 (S.D.N.Y. 1982) .......................................................... 21

*Neirbo Co. v. Bethlehem Corp.*,
 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939) .......................................... 21

*Ungar v. Orascom Telecom Holding SAE*,
 578 F. Supp. 536 (S.D.N.Y. 2008) ......................................................... 19

*Oil City Petroleum Co. v. Fabac Realty Corp.*,
 50 N.Y.2d 853, 407 N.E.2d 1334 (N.Y. 1980) ............................................... 22

*Oil City Petroleum Co. v. Fabac Realty Corp.*,
 70 A.D.2d 859, 418 N.Y.S.2d 51 (App. Div. 1979) ......................................... 22

*Osborne v. Supreme Lodge, Knights of Pythias, Insurance Department*,
 69 Mont. 361 (Montana 1924) .............................................................. 14

*Peacock v. Thomas*,
 516 U.S. 349 (1996) ...................................................................... 19

*Readco, Inc. v. Marine Midland Bank*,
 81 F.3d 295 (2d Cir. 1996) ............................................................... 14

i

*Savik, Murray & Aurora Const. Mgmt. Co., LLC v. ITT Hartford Ins. Grp.,*
   86 A.D.3d 490, 927 N.Y.S.2d 634 (App. Div. 2011) ..................................................... 9

*The Rockefeller Univ. v. Ligand Pharm. Inc.,*
   581 F. Supp.2d 461 (S.D.N.Y. 2008).......................................................................... 21

*Trounstine v. Bauer, Pogue & Co.,*
   44 F. Supp. 767 (S.D.N.Y. 1942) ............................................................................... 20

*Turner v. Wells Fargo Bank, N.A.,*
   2012 MT 213, 366 Mont. 285, 291 P.3d 1082 (Mont. 2012) ..................................... 10

*Vassenelli v. City of Syracuse,*
   138 A.D.3d 1471, 31 N.Y.S.3d 320 (App. Div. 2016) ............................................... 10

*Williams v. State Med. Oxygen & Supply, Inc.,*
   265 Mont. 111, 874 P.2d 1225 (Mont. 1994) ............................................................. 10

Statutes

28 U.S.C. § 1332 ............................................................................................................. 18

28 U.S.C. § 1963 ............................................................................................................. 19

Mont. Code Ann. § 33-15-102(2) ................................................................................... 18

Mont. Code Ann. § 33-1-711 ...................................................................................... 5, 10

Mont. Code Ann. § 33-28-101(25) .................................................................................. 12

New York BCL § 1304(a)(6) ........................................................................................... 20

Rules

C.P.L.R. § 301 ........................................................................................................ 1, 20, 21

## PRELIMINARY STATEMENT

This turn-over proceeding seeks to compel Respondent Safebuilt to pay the Amended Judgment entered against Judgment-Debtor, Pacific Re, Inc. on behalf of Pac Re 5-AT, pursuant to: (a) the Participation Agreement; or (b) the common law. Petitioners as Judgment Creditors of Pacific Re's Cell 5 submit this memorandum of law in: (i) further support of their motion for judgment (D.E. 5, Jul, 28, 2016); (ii) opposition to Respondent's motion to dismiss (D.E. 18, Aug. 29, 2016); and (iii) in support of the motion to disqualify Harris Beach, PLLC from opposing their clients' interests in this proceeding.

## SUMMARY OF ARGUMENT

First, there is no reasonable dispute that Respondent Safebuilt is the Participant of Cell 5. This was established: in agency proceedings in Montana; in Pacific Re's annual reports to Montana; by the testimony of Pacific Re and the Cell's Manager; and admitted, by Harris Beach itself, in the New York reinsurance arbitration from which the judgment springs.

Second, Harris Beach is conflicted due to its ongoing representation of Pacific Re and its Cell 5 in the New York reinsurance Arbitration and its corporate affiliates in the alter ego litigation. It is *prima facie* improper for counsel to oppose the legitimate interests of Pacific Re, Inc. in satisfying this Court's judgment.

Third, subject matter jurisdiction is satisfied by complete diversity and Safebuilt has consented to personal jurisdiction in New York by registering to do business as a foreign corporation. Its actual New York business nonetheless satisfies general jurisdiction under C.P.L.R. § 301.

## RELEVANT FACTS

**A.    Amended Judgment and Ongoing Arbitration**

This Court is familiar with the Arbitration (*In The Matter of the Arbitration of AmTrust N. Am., Inc. et al v. Pacific Re, Inc. et al.* (the "Arbitration")) and related alter ego and indemnity litigation (*AmTrust N. Am. Inc. et al v. Safebuilt Ins. Svc's, Inc. et al*, 14-cv-9494 (the "Alter Ego litigation")). As relevant to the pending motions, Judgment-Creditors demanded arbitration pursuant to the Safebuilt Captive Reinsurance Agreement seeking: (a) reimbursement for actual third-party administrator (TPA) fees and (b) additional collateral from which to pay ongoing claims. (Pet'n Ex. 1, Dkt. Nos. 1-1, 3-19-1.)

In September 2015, Petitioners secured the Interim Final Award in the amount of $7,833,424.29, which this Court confirmed in March 2016. (*AmTrust N. Am. et al v. Pacific Re, Inc. et al,* 15-cv-7505 (S.D.N.Y. May 15, 2016 ("Confirmation Matter"), Pet'n Ex. 2.) The entire amount remains unpaid. The Judgment included Petitioners' request for reserves in the amount of $6,373,244.29 in collateral as of April 30, 2015, which, if posted, would be held in trust for claims payments. (*Id.* at *3.) There are presently two remaining issues for the Arbitration hearing: (1) additional collateral requests above the Interim Final Award and (2) propriety of claims paid. (*Id.*)

### 1.    *Judgment Creditors' Pending Reserve Requests And Pacific Re's Actuarial Opinion*

As of November 30, 2015, Petitioners sought additional collateral from the Panel in the amount of $6.9M, (Nov. 30, 2016 AmTrust Reserve Request, Bryant Decl. Ex. 1), and, in a vain effort to limit discovery in the related litigation, waived any additional TPA fees due above the $1.4M already awarded, (Pltfs' Ver. Resp. to Joint Inter. No. 2, Bryant Ex. 2.)

Discovery has revealed that Pacific Re, through its manager Taft engaged Allegiant Group, LLC to conduct an actuarial reserve study and file an opinion with the Commissioner of Securities and Insurance Montana State Auditor pursuant to statute, which resulted in the determination that Cell 5 required a reserve of $7.9M as of December 31, 2015. (Stipulated Allegiant Group, LLC. at TAFT-SDNY000165817.) Harris Beach, on behalf of Pacific Re (as well as the alter ego defendants), has proffered an actuarial expert who disregards Pacific Re's filing with the Montana Commissioner and opines that the cell needs only $4.1-4.4M. (Fein Report Sec. III ¶ 2, Ex. 4.) No portion of even this undisputed collateral has been posted to date.

### 2. *Arbitral Acknowledgement of Safebuilt's Role as Participant*

At the outset of the Arbitration, the arbitral parties presented their positions to the Panel. In pertinent part, Harris Beach representing Pacific Re, identified Safebuilt as: (i) the entity that engaged non-party The Taft Companies, LLC to manage Cell 5; and (ii) the Participant for the Cell pursuant to the Participation Agreement between those two entities. (Resp. Initial Br. at 7, Ex. 5.) Pursuant to the Participation Agreement, (Pet'n at Ex. 4, Docket Nos. 1-4, 5-6, 19-3), the Participant is the beneficial owner of the Cell who is obligated to fund the Cell's liabilities in exchange for the right to any profit. (*Id.* ¶ 1.1.)

### B. **Relevant Facts From Prior Montana Declaratory Judgment**

Prior to the award, Pacific Re commenced a declaratory judgment action in U.S. District Court for the District of Montana identifying Safebuilt as the Participant in its October 1, 2014 Complaint and in its December 31, 2014 Stipulated Statement of Facts. (MT Compl. ¶ 7, Pet'n Ex. 4; *see also* Pac Re 5-AT R. 16.2(b) (3) Stipulated Statement of Facts ("R. 16 SSF") No. 3, Bryant Ex.6.) Insofar as that Court did not set aside the cell structure entirely (despite Defendants therein arguing that the Cell was improperly formed, (*accord* Resp. Mem. at 4)), it relied on this undisputed fact in issuing its decision that Pacific Re is statutorily bound to the

3

Arbitration award notwithstanding the cell structure, *Pac Re 5-AT v. AmTrust N. Am., Inc.*, No. CV-14-131-BLG-CSO, 2015 WL 2383406 at *5 (D. Mont. May 13, 2015).

**C.    Agency Proceedings**

Commencing in 2010, Pacific Refiled Annual Reports for Cell 5 with the Montana Commissioner, sworn to by certain Alter Ego Defendants, as officers of Pacific Re, identifying Safebuilt as the Participant of Cell 5. (Annual Reports 2010-2012, Bryant Exs. 7, 8, 9, (Questionnaire No. 1 at *8, *7, respectively).) This fact was then confirmed at the deposition of the Commissioner's Office wherein the Chief Financial Examiner identified Safebuilt as Cell 5's Participant. (S. Matthews Tr. at 28:20-29:1, Bryant Ex. 10.)

By Order dated March 24, 2014, *In the Matter of the Report of the Examination of Pacific Re, Inc.*, 2014-20 (I-634), the Commissioner issued its Findings of Fact and Conclusions of Law and Order Adopting the Examination Report of Pacific Re for the Period Ending Dec. 31, 2012, wherein the state appointed Auditor found that Safebuilt owned Cell 5. (Findings of Fact and Conclusions of Law at MB00082, Bryant Ex. 11.)

The Commissioner also placed Pacific Re under supervision and required its ownership to contribute $250,000 monthly to Pacific Re and prohibited distributions, changes to the business plan, and expenditures in excess of $10,000 without prior approval. (*See, e.g.,* Sept. 25, 2015 Am. Order of Supervision, INS-2014-20 at MB000098-100, Bryant Ex. 12.). The Commissioner further found: (i) that Messrs. Pike and Salvagio each owned 1/3 of Pacific Re and Mr. Savoia owned approximately 16% through Preferred Global Holdings, LLC, (Findings of Fact at MB000081, Bryant Ex. 11); ███████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████

**D.** **S.D.N.Y. Discovery Ownership and Control of Safebuilt, Preferred Global and Pac Re**

Safebuilt has disclosed it is owned in the majority by Messrs. Pike (1/3), Salvagio (1/3), and Savoia (1/6). (Safebuilt Supp. Ver. Inter. Resp. No. 4, Bryant Ex. 13.)

Preferred Global has disclosed that: (i) it has no employees, managers, or executives and that the Messrs. Pike, Salvagio, and Savoia serve as President, Vice President, and Secretary, respectively, (PGH Ver. Interr. Resp. No. 1, Bryant Ex. 14); (ii) that Pacific Re is a wholly owned subsidiary with no employees for which Pike, Salvagio, and Savoia serve as President, Vice President, and Secretary, (*id.* No. 14; *see also M.* Holycross 30(b)(6) of Pacific Re Jun. 22-23, 2016, Tr. at 49:20-21 (confirming no Pacific Re has no employees), Bryant Ex. 15)); (iii) Preferred Global has no sources of revenue, lines of business, or income, (PGH Ver. Inter. Resp. No. 15, Bryant Ex. 14); and (iv) that Technology Insurance Company is the sole insured of Cell 5, (*id.* No. 16).

*1.      Safebuilt's Role as Participant*

---

[1] Nor did Safebuilt secure AmTrust's consent. (M. Goff Oct. 30, 2015 30(b)(6) Tr. at 202:19-202:25, Ex. 16.)

Harris Beach defended the 30(b)(6) deposition of Cell 5's Captive Manager, Taft, who identified Safebuilt as the Participant without objection, (M. Goff Tr. at 90:24-91:6, Ex. 16), and explained that the failure to include Safebuilt's signature on the Participation Agreement was simple "error", (*id.* at 142:2-9).  Harris Beach defended the deposition of Pacific Re's 30(b)(6) witnesses who identified Safebuilt as the Participant without objection. (M. Holycross Tr. 17:25-18:15, Jun. 22, 2017 Ex. 15.)

Harris Beach also Defended the 30(b)(6) of Safebuilt who testified, over objection, through Mr. Salvagio that it didn't know who the Participant was and identified "the attorneys" as the individuals who would know the answer to that question. (P. Salvagio 30(b)(6) Dec. 18, 2015 Tr. at 86:13-87:19, Ex. 17.) The attorneys later took the position that the question of Safebuilt's status as the Participant was exclusively a question of law for the Court to decide:

> Q. The 30(b)(6) witness for Taft identified Safebuilt as the participant and testified this was just simply an error. And so I'm asking you, was that an error or was it deliberate that Safebuilt did not sign this document?
>
> A. We didn't deliberately do anything, so it must be an error then. . . .
>
> Q. So as the participant why has Safebuilt not funded the request for additional collateral demanded by AmTrust?
>
> MR. BENDER:   Objection. Don't answer in that form. You are drawing a conclusion by saying it's the participant.  That's not for [Taft] to decide, it's not for you to decide, it's for the court to decide, as a matter of law. So I'd appreciate it if you would rephrase the question and not try to trip him up.
>
> MR. BROWN:  I will not rephrase the question. The question stands, and I want an answer.
>
> MR. BENDER:  I move to strike it.
>
> Go ahead.
>
> MR. BROWN: Do you want the question back?
>
> THE WITNESS:  I'm confused.  You can ask it as many times as you want, I'm not -- I can't answer it.
>
> BY MR. BROWN:
>
> Q.  Can you –
>
> A.  I'm very confused on it.

6

MR. BROWN:  Can you re -- read the question back.

THE WITNESS:  The last 15, 20 minutes has been very confusing, flipping through paperwork.

MR. BROWN:  Read the question back, please.

(Record read.)

THE WITNESS:  I don't know the answer to that question.

(*Id.* at 161:21-163:12, Bryant Ex. 17.)

2.      ***Safebuilt's New York Contacts***

Public records demonstrate that: (i) the New York Department of Financial Services licenses Safebuilt as a non-resident Property & Casualty Broker and as an Surplus Line Broker, (DFS Licensing Ex. 18); and (ii) the Department of State has authorized Safebuilt to business in New York as a foreign corporation, (DOS Registration Ex. 19).

Pursuant to its licensing and authorization, Safebuilt's interactive website offers four separate insurance programs in New York (PCA-Large, PCA-Small, PCIC, and Property Preservation), ("Our Programs", Safebuilt Website, Bryant Ex. 20 at *1, *6, *11, *16, *21, <www.sisinsure.com> (last checked Sept. 8, 2016); includes New York on its program map, ("Resources", *id.* at *26-*27); offers home inspections in New York, ("Our Programs", *id.* at *29); provides access to New York regulatory and compliance material, ("Resources/Documents", *id.* at *33, *38-*40); and offers on-line quotes and applications, (*id.* at *41-*44).

Safebuilt likewise acts as managing general agent for the related general liability contractors program offered through Preferred Contractors Insurance Company Risk Retention Group, LLC, (SIS-SDNY000240310-240311, Bryant Ex. 21), and admits that it regularly conducts business in New York. During the 12 month period from April – March 2012 Safebuilt placed 733 policies throughout New York generating nearly $1M in premium and has been

generating millions of dollars of premium from New York sales on an annual basis since 2006, (SIS-SDNY000240316, SIS-SDNY000240317[2]).

### 3. *Safebuilt's Financial Records as General Agent For Judgment Creditors*

On September 2, 2015, in response to Plaintiffs' interrogatories seeking total premium, commission, and fees that Safebuilt collected from policies it sold as the program general agent, Safebuilt through counsel represented to the Honorable Magistrate Judge Cott that it could not generate those figures through automated reports.[3] (Sept. 2, 2015 Tr. at 46:6-47:1, Bryant Ex. 22.) The Magistrate ordered Defendant Safebuilt to identify with particularity, or to produce, the documents it would use to prepare its own 30(b)(6) witness to answer Plaintiffs' questions regarding the total amount of premium, commissions, and fees SIS collected from the policies it sold as general for Plaintiffs. (*Id.* 38:3-39:5.)[4]

On September 16, 2015, Safebuilt provided supplemental verified interrogatory responses, as relevant here, to Nos. 7, 8, 9, which identified the "Supplement To SIS's Interrogatory Responses". (P. Berger Sept. 16, 2015 Email, Bryant Ex. 23.) The annexed Supplement was a Bates report of 34,725 applications produced in pdf format, each of which included a "Commission Report" that itemized total premium, types and amounts of fees, and commission on each policy. (*Id.*; *accord* Resp. Br. at 12 (noting review of 35,000 applications).)[5]

---

[2] This table was produced in native excel spreadsheet and included a national listing of all PCIC policies. The exhibit employ's Excel filtering for New York and Excels auto-sum feature to total premium.

[3] Safebuilt has never explained how it can generate these reports for PCIC, (*see* fn.2, *supra*), but not for the AmTrust Program. Safebuilt's 30(b)(6) in fact testified it maintains sub-ledgers that track these very numbers. (M. Johnston Aug. 11, 2016 30(b)(6) Tr. at 184:15-185:9, Bryant Ex. 24.)

[4] Counsel nevertheless did not allow the witness to testify about their own calculations. (Salvagio 30(b)(6) Tr. at 669:2-19, Bender Ex. V.)

[5] The Native Excel Supplement to SIS' Interrogatory Responses, if printed, would generate over 2,100 pages. A sample of the first five pages is attached to Ex. 23. The interrogatory responses not at issue in this motion are not included. Safebuilt's and PGH's Supplemental Verified Responses, (Bryant Exs. 13 and 14), were attached to Mr. Berger's email as was the Exemplar SIS Commission Report submitted here as Exhibit 28 as SIS-SDNY000005797, and Mr. Savioa's Supplemental Verified Interrogatory Responses of September 16, 2015, Ex. 30 herein.

Judgment Creditors requested the parties jointly engage Special Counsel to render the calculations but the Alter Ego Defendants refused. (Mar. 17, 2016 Tr. at 54:22-55:12, Bender Ex. P.) To avoid dueling reports, Judge Cott directed the Parties to meet-and-confer to find some uniform way to establish the numbers. (*Id.* at 55:13-56:4.)

On May 13, 2016, Special Counsel provided its raw database to parties. (*Accord* Resp. Br. at 12.) According to this report, Safebuilt's 34,725 applications contained only 13,845 non-duplicative, completed, applications – meaning well over half of the documents disclosed in response to the Magistrate's Order were either blank or facially duplicative. (Bryant Decl. ¶¶ 25, 28 .)

On May 20, 2016, Plaintiffs submitted a summary of the Special Counsel report to the Court as an exhibit to its unilateral motion to extend the discovery schedule in the Alter Ego litigation. (Fee Summary Exhibit, D.E. 209-1 May 20, 2016 (14-cv-9494), Bryant Ex. 25.)[6] The Court granted the extension, Defendants did not object to the summary, and the exhibit remains publicly available on PACER.

## ARGUMENT

## POINT I

## THERE IS NO REASONABLE DISPUTE THAT SAFEBUILT IS THE PARTICIPANT

There can be no reasonable dispute that Pacific Re unquestionably relied on Safebuilt to act as the Participant. Both Taft and Pacific Re so testified, which is confirmed by Pacific Re's prior representations to the Montana Court and Commissioner. Safebuilt was clearly aware of this role; even if it mistakenly did not sign the Participation Agreement because its owners and officers executed Cell 5's Annual Reports on behalf of Pacific Re. As agents for both Pacific Re

---

[6] Plaintiffs employed the Excel auto sum feature to total the line itemized fees from Safebuilt's applications, which reveal Safebuilt diverted $10.7M in fees from the program at the expense of the Cell. Safebuilt apparently objects to the fact that Judgment Creditors are using the spreadsheet for its intended purpose. (Resp. Br. at 14.)

and Safebuilt, the knowledge of individual employees, acting within the scope of their authority, is imputed to the principal. *Compare Savik, Murray & Aurora Const. Mgmt. Co., LLC v. ITT Hartford Ins. Grp.*, 86 A.D.3d 490, 494, 927 N.Y.S.2d 634, 637 (App. Div. 2011) (*citing Kirschner v. KPMG LLP,* 15 N.Y.3d 446, 465, 912 N.Y.S.2d 508, 938 N.E.2d 941 (N.Y. 2010)), *with Williams v. State Med. Oxygen & Supply, Inc.*, 265 Mont. 111, 117, 874 P.2d 1225, 1229 (Mont. 1994)(same). Likewise, Pacific Re's owners could have appealed the Commissioner's Finding of Fact that Safebuilt was the owner of the Cell 5. Mont. Code Ann. § 33-1-711. Instead, they complied with the Orders and admitted by their conduct that Safebuilt is the Participant.

Safebuilt now seeks to dispute the positions that have been long established through the ordinary course of its business. There are three reasons why this attack does not create a defense to the Participation Agreement.

First, estoppel: in two flavors. Promissory estoppel prevents a party from changing its position when another party has relied on that position to its detriment. *Compare Vassenelli v. City of Syracuse*, 138 A.D.3d 1471, 1475, 31 N.Y.S.3d 320, 325 (App. Div. 2016) (denying motion to dismiss claims seeking to estop city from continued payments) (reciting elements of promissory estoppel are "a clear and unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained in reliance on that promise"), *with Turner v. Wells Fargo Bank, N.A.*, 2012 MT 213, 366 Mont. 285, 291–92, 291 P.3d 1082, 1087–88 (Mont. 2012) (holding promissory estoppel occurs where "(1) a promise clear and unambiguous in its terms; (2) reliance on the promise by the party to whom the promise is made; (3) reasonableness and foreseeability of the reliance; [and] (4) the party asserting the reliance must be injured by the reliance"). Even though Safebuilt did not sign the Participation Agreement, that alone is too slender a reed to lean on after representing to Pacific Re, Taft, and

10

the Montana Commissioner, that it was the Participant. Safebuilt is estopped from changing that position simply to avoid payment at Pacific Re's detriment. *Id.*

Likewise, agency estoppel bars Safebuilt from taking a different position than that of the Montana Commissioner on the identical issue of whether Safebuilt is the Cell participant. Melendez v. McCrowell, 139 A.D.3d 1018, 1019–20, 32 N.Y.S.3d 604, 606 (App. Div. 2016) ("quasi-judicial determinations of administrative agencies are entitled to collateral estoppel effect where the issue a party seeks to preclude in a subsequent civil action is identical to a material issue that was necessarily decided by the administrative tribunal and where there was a full and fair opportunity to litigate before that tribunal"), *with* Cartwright v. Scheels All Sports, Inc., 2013 MT 158, 370 Mont. 369, 373, 310 P.3d 1080, 1084 (Mont. 2013) (holding administrative estoppel only applies to identical issues). Safebuilt had its opportunity to dispute its role as Participant and may not do so now.

Second, the doctrine of practical construction teaches that the best evidence of the parties' intended meaning of an ambiguous contract is their pre-litigation conduct. *Cumberland Farms, Inc. v. Rian Realty, Ltd.*, No. CIV.A. CV04-3991 (DG, 2007 WL 1232072, at *13 (E.D.N.Y. Apr. 26, 2007) ("Under the doctrine of practical construction, courts may, when examining an ambiguous contractual term, look to the parties' post-execution acts in order to determine their intent"). Here, the owners of Safebuilt and Pacific Re likewise fully acknowledge the symbiotic relationship between Cell 5 and Safebuilt throughout the Annual Reports. For over 150 years, the Supreme Court has held the parties pre-litigation conduct is entitled to great weight in constructing their intended meaning. *Chicago v. Sheldon, 76 U.S. 50, 54 (1869).*

Third, Safebuilt's 30(b)(6) testimony is binding. Any one of the three answers Mr. Salvagio proffered forecloses this defense: (i) if Safebuilt does not know if it is the Participant it

may not now rebut the *prima facie* demonstration that it is; (ii) if it's failure to sign the Participation Agreement was an error, the parties pre-litigation conduct and agency findings must prevail; or (iii) if Safebuilt does not know how to answer Judgment Creditors' demand for collateral, then by definition it has no defense to Pacific Re in this proceeding and may not proffer an answer now.[7]

### POINT II

### HARRIS BEACH, PLLC SHOULD BE DISQUALIFIED FROM REPRESENTING CONCURRENT ADVERSE INTERESTS

Harris Beach may not represent concurrent conflicting interests. In *GSI Commerce Solutions, Inc. v. BabyCenter, LLC* 618 F.3d 204, 206 (2d Cir. 2010), the Second Circuit disqualified counsel under the prohibition of concurrent conflicted representation. GSI contracted with BabyCenter, which was a wholly-owned subsidiary of Johnson & Johnson, Inc. (J&J) that relied on J&J for back-office support. *Id.* at 207-208. The law firm of Blank Rome had an ongoing engagement with J&J and provided unrelated counsel to BabyCenter. *Id.* at 206-207. Blank Rome did not, however, provide any services with regard to GSI-BabyCenter contract. *Id.* at 208.

When Blank Rome demanded mediation and arbitration on behalf of GSI for BabyCenter's alleged breach, BabyCenter refused to proceed to arbitration as long as Blank Rome was involved. *Id.* When GSI moved to compel arbitration, BabyCenter successfully cross-moved to disqualify Blank Rome for conflicted concurrent representation. *Id.* at 209. While the

---

[7] Safebuilt correctly points out that Montana law applies to the Participation Agreement and ignores: (a) that the Montana Legislature specifically requires these agreements to form a cell, Mont. Code Ann. § 33-28-101(25) (defining participant contract), and (b) the Montana District Court relied on Pacific Re's stipulated facts and did not set the cell structure aside, Pac Re 5-AT, 2015 WL 2383406 at *5. Safebuilt does not argue the agreement is unenforceable. To that end, Safebuilt fails to demonstrate an actual conflict exists at common law for the negligence or vicarious liability claims under Counts II and III, respectively, and New York law may appropriately be applied. Excelsior Capital LLC v. Allen, No. 11 CIV. 7373-CM, 2012 WL 4471262, at *12 (S.D.N.Y. Sept. 26, 2012), aff'd, 536 F. App'x 58 (2d Cir. 2013) (citations omitted).)

burden is a heavy one and courts are not inclined to disturb a litigant's choice of counsel, the Second Circuit has fashioned the corporate affiliate conflict rule which turns on (i) the degree of operational commonality between affiliated entities, and (ii) the extent to which one depends financially on the other. As to operational commonality, courts have considered the extent to which entities rely on a common infrastructure. *GSI*, 618 F.3d at 210 (2d Cir. 2010).

As in *GSI*, Pacific Re is dependent on Safebuilt and its principals who own and control it. There is no dispute that Savoia, Salvagio, and Pike ultimately own and control Safebuilt and Pacific Re. Pacific Re itself does not have any employees and relies entirely on Safebuilt and Taft whom Safebuilt retained. Harris Beach presently represents all defendants in the Alter Ego litigation.

Nor is there any dispute that Harris Beach represents Pacific Re in the Arbitration where it conceded that Safebuilt was the Participant. Yet Harris Beach now opposes Pacific Re's interests and attacks its own position in the Arbitration that Safebuilt was the Participant. Harris Beach has placed Safebuilt's interest in avoiding liability as the Participant above Pacific Re's right to funding under the Participation Agreement. Harris Beach, Safebuilt, and the other Alter Ego Defendants may prefer to keep Pacific Re in a perpetual state of insolvency and on the verge of liquidation, but Pacific Re has every right to demand funding from the namesake of the Safebuilt Captive Reinsurance Agreement. Safebuilt's dominion over Pacific Re, and Harris Beach's ongoing joint defense, prevents Pacific Re from enforcing the Participation Agreement in the first instance; Harris Beach may not now oppose Pacific Re's interests.

Even in the Arbitration, Harris Beach places Safebuilt's interests above Pacific Re's. Discovery has revealed that, as of June 30, 2016, Judgment Creditors have paid over $5.3M in unreimbursed claims. (Pltfs' Resp. to Joint Inter. No. 1, Bryant Ex. 2.) Harris Beach proffers an

actuarial expert who purports that $4.1 – 4.4M is sufficient reserve. Even if that is a reasonable actuarial estimate (which it is not), Pacific Re has reported to the Montana Commissioner Pacific Re should be reserved to $7.9M. If Pacific Re were to proffer $4.4M today, Pacific Re would still owe $2.3M for TPA fees and unreimbursed claims. Harris Beach's simply ignores Pacific Re's actual filing with the Montana Commissioner and now argues that Safebuilt should provide no funding at all.

Harris Beach agrees that Judgment Creditors stand in the shoes of its own client. (Resp. Br. at 19 (*citing Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 83 (2d Cir. 2002)).) On this record, the corporate-affiliate conflict must attach and prohibit the concurrent representation adverse to Pacific Re's interests as *prima facie* improper. The only exceptions to this conflict are not available here: the subject matters are identical; Harris Beach cannot avoid an actual conflict between Safebuilt's repudiation of the Participation Agreement and Pacific Re's reliance thereon; and no waiver is available. Harris Beach is fully aware of the conflict and makes no effort to secure a waiver from Pacific Re or to create an in-house ethical firewall. Nor could it. Waiver is defined as a voluntary relinquishment of a known right. *Compare Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 303 (2d Cir. 1996), *with Osborne v. Supreme Lodge, Knights of Pythias, Insurance Department,* 69 Mont. 361 (Montana 1924) (holding waiver is generally voluntary relinquishment of known right). Any consent, in this case, would ultimately come from the very individuals that seek to keep Pacific Re insolvent.

In *Madison92nd Street Associates, LLC v. Marriott International, Inc.*, No. 13 Civ. 291(CM), 2013 WL 5913382 at *1 (S.D.N.Y. Oct. 31, 2013), *aff'd sub nom. Boies, Schiller & Flexner LLP v. Host Hotels & Resorts, Inc.*, 603 F. App'x 19 (2d Cir. 2015), this Court chastised

an otherwise highly reputable and well-respected law firm for overlooking an obvious conflict. There, Boies, Schiller, and Flexner (BSF) represented Host Hotels & Resorts against Marriot International Inc. and eventually settled the matter. *Id.* Many years later on behalf of a new client who alleged damage arising out of the Host-Marriott settlement, BSF prepared a complaint against Host and Marriot alleging that the very settlement agreement, which BSF drafted and approved, was a thinly veiled conspiracy hiding illegitimate ulterior motives. *Id.* (holding BSF should have seen the conflict when preparing complaint that attacked its prior work).

As in *Madison92nd Street,* Harris Beach has filed an opposition and motion that are utterly inconsistent with its position on behalf of Pacific Re in the Arbitration. *Cf. Id.* 2013 WL 5913382 at *10 (explaining BSF purported to recognize conflict when inconsistent positions became apparent). As in *Madison92nd Street*, Harris Beach has access to Pacific Re's confidential and privileged information that it now uses in a conflicted representation. *Cf. id.* (holding access to privileged information is disqualifying factor in subsequent conflicted representation). Harris Beach not only ignores the testimony of its other clients who testified, without objection, that Safebuilt is the Participant, but its very own statement to the Panel on behalf of Pacific Re declaring Safebuilt that Participant. Safebuilt testified that it did not know whether it was the Participant and deferred to the lawyers. The lawyers have now apparently changed their mind and claim Safebuilt should not have to satisfy this Court's Judgment as Participant.

Harris Beach may not disregard Pacific Re's years' long expectation and reliance on Safebuilt as the Participant as represented to the Montana Commissioner and the Montana District Court. Harris Beach should be disqualified from subordinating the legitimate business interests of Pacific Re to Safebuilt's self-serving efforts to avoid payment.

## POINT III

## THERE IS NO REASONABLE DISPUTE THAT THE AMOUNT OF FEES SAFEBUILT DIVERTED FROM CELL 5 WOULD FULLY SATISFY THE JUDGMENT

Anticipating Safebuilt's self-serving repudiation of its role as Participant, Judgment Creditors assert common law claims in Counts II and III to claw-back premium Safebuilt negligently diverted from the Cell. Under the dominion of Safebuilt and while subject to the joint defense, Pacific Re has not been allowed to pursue Safebuilt for diverting approximately $10M as the Participant. As relevant here, Safebuilt collected $19.4M in total premium but reported and remitted only $8.7 as "pure premium". (Fee Summary, Bryant Ex. 25.)

Pure premium is an industry term that equates to the "risk- bearing" portion of premium. (Habeck 30(b)(6) Tr. at 98:10-13, Bryant Ex. 26.) By way of example, some premium dollars go to pay commission, some may go to fronting fees, some to expense; but "pure premium" is the rated estimate of how much will actually be needed to pay claims. Instead of reporting total premium and fees collected, Safebuilt reported and remitted partial premium and did not report the fees collected even when asked. (*See* Sample USIC Monthly Report ¶¶ 1-6, Bryant Ex. 27.) Judgment Creditors contend that Pacific Re has an independent right to claw-back these premium dollars.

On July 22, 2016, after fact discovery had closed, Defendants in the Alter Ego litigation requested a meet-and-confer to review Special Counsel's data entry project and discovery of purported duplicate entries in the fee calculations. Safebuilt now apparently argues that its own supplemental interrogatory responses that Judge Cott specifically ordered for this purpose were incomplete or inaccurate.

16

Safebuilt offers no excuse for its brinksmanship. Fact discovery closed in the Alter Ego litigation on July 7, 2016, subject to limited exceptions. (Jul. 5, 2016, D.E. 227 (14-cv-9494).) Safebuilt has never amended this component of its Verified Supplemental Interrogatory Responses of September 16, 2015; it has not sought leave to do so; and only now, after its own data demonstrates $10M is at play, complains that its verified interrogatory responses are inaccurate after insulating itself from further depositions.

Safebuilt cannot now be allowed to avoid its own verified interrogatory responses issued in direct response to a Court Order. Safebuilt incorrectly complains that Judgment Creditors ambushed it with the summary at an August 10, 2016, (Resp. Br. at 14), deposition, and ignores that the exhibit was filed on PACER three months prior. Likewise, Safebuilt now complains that the $2,680,424.59 it collected as "Broker Fees" should not be included in the $10,701,892.41 of "Total Fees Denuded" because these allegedly went to the third-party producers. (Resp. Mem. at 13.) However, Safebuilt's Verified Interrogatory Responses demonstrate that Safebuilt kept these fees for itself, which it has never amended. (Safebuilt Supp. Ver. Inter. Resp. No. 8.)

Likewise, Safebuilt complains that its attorneys determined as much as $1.4M in duplicate charges were included in Special Counsel's report but ignores that Safebuilt itself included 7,997 duplicate applications (and 12,883 blanks). A strict reading of Safebuilt's interrogatory responses could include these duplicate charges, which Special Counsel reasonably did not do.[8] Safebuilt neglects to tell this Court that it paid commission on the Brokers Fees,

---

[8] While Safebuilt has not proffered a fix or clearly identified what additional data needs to be included, it appears to Judgment Creditors that Safebuilt is proposing to provide Special Counsel with at least two additional sources of data: cancelled policies and renewal policies. (Declaration 32.) Neither of these were included in the original disclosure of September 16, 2015. (SIS Ver. Supp. Interr. Resp. No. 7-9.) Safebuilt's estimated $1.4M figure appears spurious at best: it includes renewal policy fees that were in fact collected. Upon information and belief Safebuilt accounted for them in the Supplement to its Interrogatory Responses by including the sane application twice (renewal applications do not appear to have been produced or used). Safebuilt now wants Special Counsel to exclude those figures from the disclosed data source and re-add the identical figures from other data sources. (Bryant Decl. ¶ 32, Ex. 29 (Aug. 26, 2016 Bryant Email objecting to sharing cost of belated project).)

which Judgment Creditors contend is an admission that these are premium dollars. (Exemplar SIS Commissions Report at *6 (including "Broker Fees" in the amount multiplied against the commission rate), Bryant Ex. 28.)The Commission Reports plainly reports Safebuilt's contention that it did not keep the Brokers Fees: the box entitled "Total To be Retained By The Broker" includes only the 15% commission.

Finally, Safebuilt ignores that prevailing law in California and Montana both define premium as any and all charges imposed on an insurance policy. *Compare* Pet'n Mem. Law at 7 (*citing* authority) (D.E. 6 Jul. 28, 2016), *with* Mont. Code Ann. § 33-15-102(2) (West) ("Premium" is the consideration for insurance, by whatever name called. Any assessment or membership, policy, survey, inspection, service, or similar fee or charge in consideration for an insurance contract is deemed part of the premium").

Discovery is over. Safebuilt may argue about the facts in the Alter Ego litigation but it may not verify incorrect interrogatory responses with impunity. There is no reasonable excuse for this behavior. Pacific Re has an interest in these funds which more than cover the current amount due.

## POINT IV

## SAFEBUILT'S JURISDICTIONAL DEFENSES ARE WITHOUT MERIT

Safebuilt either misapprehends the nature of this special proceeding or is just playing dumb. First, there are no claims pending between it and Pacific Re. Judgment Debtor is not a party to the Alter Ego litigation and there are no claims pending between it and Safebuilt in any proceeding. Second, the Court is not limited to ancillary jurisdiction to enforce a judgment. Third, Safebuilt has consented to personal jurisdiction by registering as foreign corporation with

the New York Department of State. Fourth, dismissal without prejudice is not warranted and Pacific Re has been properly served.

## A.  Complete Diversity Vests This Court With Subject Matter Jurisdiction

The Petition is not an ancillary proceeding in the Confirmation Matter or any other pending action. It asserts 28 U.S.C. § 1332 vests this Court with subject matter jurisdiction. (Pet'n § 6.) Safebuilt acknowledges there is complete diversity and instead attacks the petition for want of ancillary jurisdiction to enforce a judgment. *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100 (2d Cir. 2001) (explaining that establishing third-party liability for judgment requires independent jurisdictional basis). Petitioners do not seek to set aside a fraudulent conveyance or to turn-over funds Safebuilt holds on account for Pacific Re or the Cell but to prove Safebuilt's liability to Pacific Re pursuant to either the Participation Agreement or at common-law.

Safebuilt simply ignores that complete diversity is met: Safebuilt is a Californian corporation, Judgment Debtor is a Montana corporation, and Judgment Creditors are incorporated in Delaware and New Hampshire respectively, with principal places of business in New York. (*Pet'n* ¶¶ 1-5.) Safebuilt laments that this proceeding is an end-run around the Alter Ego litigation, but that questionable joint-defense strategy does not divest this Court of jurisdiction.

None of Safebuilt's authority compels a different result. In *Epperson*, ancillary jurisdiction was mandatory since complete diversity was lacking. *Id.* In *Ungar v. Orascom Telecom Holding SAE*, 578 F. Supp. 536, 537-538 (S.D.N.Y. 2008), kin of victims killed in a Hamas attack endeavored for years to enforce a judgment against elusive foreign entities. In that turnover proceeding, apparently one of five such proceedings, the judgment-creditors invoked 28

U.S.C. § 1963 to enforce a judgment obtained in Rhode Island. *Id.* at 545. In *Karaha*, 313 F.3d at 78, the Court had ancillary jurisdiction over the trust funds and the issue was whether judgment debtor retained any property right therein. In *Peacock v. Thomas*, 516 U.S. 349, 352 (1996), the Supreme Court held ERISA created no federal veil piercing cause of action and concluded that the District Court did not have ancillary jurisdiction over an employee's state law claims against the sole shareholder of his erstwhile employer.

This Court, however, is independently vested with diversity jurisdiction over Pacific Re's state law claims.

**B.     Safebuilt Is Subject To Personal Jurisdiction As An Authorized Foreign Corporation**

Safebuilt argues that it does not maintain sufficient contacts to satisfy due process or create personal jurisdiction under C.P.L.R. §§ 301 or 302. This is false.[9] Safebuilt neglects to reference the fact that it is authorized by the Secretary of State to do business in New York and holds non-resident broker's and surplus lines licenses with the Department of Financial Services.

---

[9] While generally alarming and rare, this lack of candor has become the norm in the Alter Ego litigation. Judgment Creditors will briefly back this up and cite four easily identifiable wholesale discovery abuses that have never been explained or redressed. On September 2, 2016, Safebuilt through counsel represented that it did not have an operating account. (Sept. 2, 2016 Tr. at 43:11-44:5.) Plaintiffs therein argued that it was impossible take commission out of premium without an operating account. (*Id.* at 42:16-43:10.) The Magistrate was reasonably cabined into inaction through Safebuilt's misrepresentation. (*Id.* 44:5-45:8.) Yet, in complying with the supplements that the Magistrate did order, on September 16, 2015, the Alter Ego Defendants were forced to disclose the existence of the SIS general operating account. (*See, e.g.,* Savoia Ver. Supp. Iner. Resp. No. 3, Bryant Ex. 30.) During that same hearing, Safebuilt represented that it could not generate automated premium, commission, and fee reports for its sales general agent for AmTrust. Safebuilt has never explained how it can generate these reports for PCIC. (SIS-SDNY000240316-240317, Bryant Ex. 21.) Nor could it now insofar as its 30(b)(6) witness testified that it maintained sub-ledgers accounts that track this specific income. (M. Johnston Tr. at 184:15-185:9, Bryant Ex. 24.) Despite this Court's standing April 10, 2015, Rule 26 Order specifically authorizing discovery into PCIC, (Apr. 10, 2015 Tr. 9:13-16 (holding objections to PCIC discovery are *prima facia* sanctionable), and Pacific Re, (*compare id.* 9:20-10:3, *with* Minute Entry 06/06/2015 (14-cv-9494) (opening Pacific Re alter ego discovery), HarrisBeach nevertheless objected to AmTrusts' supboena on Pacific Re and refused to produce a witness until after Plaintiffs sought judicial intervention. (P. Berger Oct. 10, 2015 Pac Re letter, Bryant Ex. 32.) Likewise, Safebuilt's in-house General Counsel who attends virtually all of the Safebuilt depositions, purported to represent PCIC as its general counsel and objected to all discovery Plaintiffs sought. (M. Martin Oct. 20, 2015 PCIC Letter, Bryant Ex. 33.)PCIC's 30(b)(6) witness denied that Mr. Martin represented them. (Bryant Decl. ¶ 36.)Defendants did not relent until after Plaintiffs sought Magistrate intervention. (id. ¶¶ 35, 36.)

(Bryant Ex. 18.) Pursuant to New York BCL § 1304(a)(6), for the privilege of doing business in New York it designated the Secretary of State as its agent.

It has been well settled for nearly a century that when a foreign corporation designates the Secretary of State as its agent for service of process that it consents to personal jurisdiction. *Trounstine v. Bauer, Pogue & Co.*, 44 F. Supp. 767, 770 (S.D.N.Y. 1942) ("The designation of the Secretary of State upon whom process might be served in this state was a consent to be sued here, and a waiver of any claim of want of jurisdiction over the person of the corporation.") *decree aff'd,* 144 F.2d 379 (2d Cir. 1944) *cert. denied*, 65 S.Ct. 190, 323 U.S. 777 (1944); *see also Neirbo Co. v. Bethlehem Corp.*, 308 U.S. 165-175, 60 S.Ct. 153, 84 L.Ed. 167 (1939) (holding statutory designation of an agent is actual consent to suit). Courts in this district not only still follow this simple rule, *Mija Assoc's v. Haliburton Svc's*, 562 F. Supp 418, 419 (S.D.N.Y. 1982) (denying motion for want of personal jurisdiction as to defendant registered to do business in New York), but hold that the consent is binding even if the foreign corporation does not actually do business in New York. *The Rockefeller Univ. v. Ligand Pharm. Inc.*, 581 F. Supp.2d 461, 465-466 (S.D.N.Y. 2008) (distinguishing prior cases and noting modern consensus).

Even absent this bright line rule, Safebuilt would be subject to general jurisdiction in New York. Safebuilt's own cases demonstrate the criteria are guidelines and the inquiry is whether Safebuilt systematically or consistently does business in New York. Safebuilt suggests that it does not do any business at all in New York State, yet its website, licensing, and business records demonstrate the contrary. There is no question that SIS actively does business in New York satisfying C.P.L.R. § 301. From April 2011 – March 2012 sold more than two policies per day in New York as MGA for PCIC, (Bryant Ex. 21 at SIS-SDNY000240317), and annually

21

generated millions of dollars in premium from New York sources during the relevant time period, (*id.* at SIS-SDNY0000240316).

Safebuilt maintains its licensing and authorization specifically to do this business. Safebuilt may invite the Court to ignore these facts but Judgment Creditors contend it could nevertheless be hauled into New York Courts under C.P.L.R. § 301 for any reason at all.

**C.    Pacific Re Consented To Enforcement Jurisdiction In New York**

Dismissal is not warranted for belated service on the judgment debtor. Pacific Re specifically agreed to voluntarily submit to this Court's jurisdiction upon request. (Safebuilt CRA Art. 23, Pet'n Ex. 1.) No formal service is needed. Even if it is, Safebuilt's authority does not mandate dismissal.

In *Eiduson Fuel & Hardware Co. v Drew*, 59 A.D.2d 1025, 1026, 399 N.Y.S.2d 764, 765 (4th Dep't 1977), the Appellate Division agreed that service on the judgment debtor was mandatory but remanded the matter back to the Supreme Court to allow petitioner to do so. Full legal papers  for formal service on Pacific Re were sent out for service on September 6, 2016, (Bryant Decl. ¶ 37.), Pacific Re has consented to jurisdiction, and no jurisdictional defect exists.

In *Oil City Petroleum Co. v. Fabac Realty Corp.*, 50 N.Y.2d 853, 854, 407 N.E.2d 1334, 1335 (N.Y. 1980), the Court of Appeals affirmed the dismissal only on the ground that the judgment debtor had divested itself of any interest in the subject rents, which were therefore beyond the scope of the turnover proceeding. Safebuilt relies on the unaffirmed language in the Appellate Division decision, which affirmed dismissal without prejudice, *Oil City Petroleum Co. v. Fabac Realty Corp.*, 70 A.D.2d 859, 859, 418 N.Y.S.2d 51, 51 (App. Div. 1979). While Safebuilt would be pleased with a dismissal without prejudice simply to delay judgment, if this is

the only defense it can sustain the parties would find themselves before this Court in 30 days. The defense is a ploy to further delay judgment.

## **CONCLUSION**

Petitioners AmTrust North America, Inc. and Technology Insurance Company Inc. as Judgment Creditors of Pacific Re, Inc. on behalf of PAC RE 5-AT request an Order: (1) directing Judgment be entered against Respondent Safebuilt Insurance Services, Inc. pursuant to Rule 69(a) of the Federal Rules of Civil Procedure and New York Civil Procedure and New York Civil Practice Law and Rules §§ 5201(a), 5221(a), 5225(b) and 5227 in the principal amount of $7,833,474.29, plus interest as of July 28, 2016 in the amount of $628,742.35, for a total amount of $8,462,216.64, exclusive of attorney's fees and costs, together with pre-judgment interest through the date of judgment and post-judgment through the date of payment; or in the alternative (2) disqualifying Harris Beach, PLLC from further appearing in this proceeding; and (3) such other relief as this Court deems just and equitable.

Date:   Garden City, New York
        September 12, 2016

Respectfully submitted,

**OHRENSTEIN & BROWN, LLP**

By:_____
        *Matthew Bryant, Esq.*
        *Attorneys/Counsel for Plaintiffs*
        1305 Franklin Avenue, Suite 300
        Garden City, New York 11530
        Tele No.: 516-535-4400
        Fax No.: 516-873-8912
        Matthew.Bryant@oandb.com

TO:     All Counsel of Record in U.S.D.C S.D.N.Y. No. 14-CV-9494

23